**Virgil ROACH, Plaintiff,**

v.

**Sheriff Dale MADDEN, Defendant.**

**No. LR–C–89–627.**

United States District Court,
E.D. Arkansas, W.D.

Dec. 20, 1989.

MEMORANDUM OPINION
AND ORDER

HENRY WOODS, District Judge.

### INTRODUCTION.

On August 1, 1989, plaintiff, Virgil Roach, filed the *pro se* complaint at bar pursuant to 42 U.S.C. § 1983. His complaint, which seeks damages and declaratory relief, was submitted as a result of the actions taken by defendant, Dale Madden, Sheriff of Prairie County, Arkansas, in evicting him from his residence pursuant to a Writ of Assistance ("Writ") issued by the Chancery Court of Prairie County, Arkansas, Northern Division. Plaintiff maintains that defendant's actions give rise to three causes of action:

22. Defendant Madden along with Defendants John Doe One through Ten seized the Plaintiff's private property without a lawful Court Order in violation of the Plaintiff's constitutional right to be free from unlawful seizures of his private property.

23. Defendant Madden's conduct in not allowing the Plaintiff an opportunity to remove his property from the seized real estate violated the Plaintiff's constitutional right to due process and equal protection of the law.

24. Defendant Madden's conduct of damaging, destroying, and distributing the Plaintiff's personal property violated the Plaintiff's inherent right to possess and use personal property and such conduct violated the Plaintiff's right to due process and equal protection of the law.

Complaint at 6. Defendant joined the issues by filing an answer on August 18, 1989.

On October 4, 1989, defendant filed the pending motion for summary judgment.[1] His motion, supported by an affidavit and various other exhibits, was predicated upon two grounds. First, he alleged that his actions in evicting plaintiff were pursuant to a valid court order. He therefore maintained that he was entitled to quasi-judicial, or absolute, immunity from suit. Second,

Virgil Roach, pro se.

David M. Fuqua, North Little Rock, Ark., for defendant.

1. Defendant also filed at that time motions for protective order and to stay discovery. Both motions were previously granted. *See* Order of December 8, 1989.

as an alternative contention, he alleged that his actions were such that a reasonable officer could have believed them lawful, in light of the clearly established law and the information he possessed at the time of plaintiff's eviction. Thus, he maintained that he was entitled to qualified immunity from suit. Plaintiff responded to this motion on October 30, 1989. His response was supported by essentially the same exhibits submitted by defendant, plus his own affidavit and those of Zelma Nell Roach and Phil Isbell.

The Court has thoroughly examined the various pleadings and exhibits submitted by the parties. This examination has persuaded the Court that the material facts are not in dispute and defendant is entitled to judgment as a matter of law. His motion for summary judgment is therefore granted.

SUMMARY JUDGMENT. "A motion for summary judgment should be granted if, in viewing the evidence in the light most favorable to the non-moving party, 'there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.'" *Nelson v. City of McGehee*, 876 F.2d 56, 57 (8th Cir.1989) (citation omitted). *See also* Fed.R.Civ.P. 56. The non-moving party, in opposing the motion, must be given the benefit of all favorable factual inferences. *See Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir.1987). When a motion for summary judgment is made and supported as provided for by Rule 56, the non-moving party may not " 'rest upon the mere allegations or denial of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Nelson v. City of McGehee*, 876 F.2d at 57 (citation omitted). "Only disputes over facts that may affect the outcome of the lawsuit under the governing substantive law will properly preclude the entry of summary judgment." *Id.* (citation omitted).

 FACTS. The parties have submitted several affidavits and various other exhibits. Defendant maintains that the Court should not consider two of the affidavits submitted by plaintiff, the first by

Zelma Nell Roach and the second by Phil Isbell. It is defendant's position that neither affidavit is notarized nor falls within the exception found in 28 U.S.C. § 1746. *See* Reply at 3. It is true neither affidavit is notarized, but both were made under penalty of perjury "after being first duly sworn." *See* Affidavits of Zelma Nell Roach at 1 and Phil Isbell at 1. The Court therefore finds that both comply with § 1746, *see Pfeil v. Rogers*, 757 F.2d 850, 858–59 (7th Cir.), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1985), and the matters attested to in the affidavits will be considered by the Court in resolving defendant's motion.

The various pleadings and exhibits establish the following material facts:

1. On March 24, 1977, plaintiff and his wife executed and delivered a promissory note to the Federal Land Bank of St. Louis ("Bank") in the amount of $64,000.00. *See* Defendant's Exhibit B at 3. That same day, plaintiff and his wife, in order to secure the payment of the note, executed and delivered to the Bank a mortgage conveying the following real property:

All of the Northeast Quarter (NE ¼) of Section Thirty–Two (32), in Township Four North (T4N), Range Six West (R6W) of the Fifth Principal Meridian, Northern District of Prairie County, Arkansas, subject to all public and private roads and easements.

Defendant's Exhibit B at 3. (Hereinafter referred to as the "farm").

2. Plaintiff and his wife failed to satisfy the terms of the note because on July 20, 1987, the Bank foreclosed on the farm. *See* Defendant's Exhibit B. A foreclosure sale was later held, and the farm was purchased by E.L. Hall Farm, Inc. ("Hall"). *See* Defendant's Exhibit C.

3. Notwithstanding this sale, plaintiff and his wife refused to surrender possession of the farm to Hall. *See* Defendant's Exhibit A.

4. Thereafter, Hall sought, and obtained, a Writ from the Chancery Court of Prairie County, Arkansas, Northern Divi-

sion, directing defendant to accomplish the following:

> take possession of [the farm] from any and all occupants and possessors of same and deliver peaceful possession of [the farm] to [Hall], the rightful owner, purchaser and grantee; and you are further directed to act promptly and report to this Court your actions taken pursuant to this Writ.

Defendant's Exhibit A.

5. Defendant received the Writ on November 17, 1987. *See* Defendant's Affidavit at 1.

6. During late December of 1987, defendant contacted plaintiff to inform him of the Writ and inquire whether he would voluntarily surrender possession of the farm by January 1, 1988. *See* Defendant's Affidavit at 1. Plaintiff stated that his family would not vacate the farm. *See* Defendant's Affidavit at 1.

7. On March 15, 1988, defendant again contacted plaintiff to inform him of the Writ and inquire into when he might surrender possession of the farm. *See* Defendant's Affidavit at 1. Plaintiff responded, "Why would I give you a date that I'm going to move whenever, I, you don't have a right to take anymore, you're plumb out of the judges ..." Defendant's Affidavit at 1. Because he refused to indicate when he might move, defendant told plaintiff that he would be evicted that day and should remove his personal items immediately. *See* Defendant's Affidavit at 1–2. Defendant also told plaintiff that once he left for the day, the farm would be sealed and any remaining personal items could be removed at a later time by making arrangements with defendant. *See* Defendant's Affidavit at 2. As their conversation continued, defendant learned that plaintiff was in bankruptcy. *See* Defendant's Affidavit at 2. Upon learning this, defendant contacted his office to determine "whether any orders of [the bankruptcy court] prevented [him] from executing the Writ ..." Defendant's Affidavit at 2. Defendant's office con-

firmed that plaintiff was in bankruptcy and that a stay had been entered. Upon learning this, defendant vacated the farm and took no further action to evict plaintiff. *See* Defendant's Affidavit at 2.

8.' On April 29, 1988, United States Bankruptcy Judge Robert F. Fussell entered an order relaxing the previously entered stay because the farm was not property of the estate pursuant to 11 U.S.C. § 541. *See* Defendant's Exhibit 2.

9. Shortly thereafter, defendant learned that the bankruptcy court had relaxed the stay. *See* Defendant's Affidavit at 2. He contacted the Chancellor to determine whether the Writ was still valid. *See* Defendant's Affidavit at 2. He was told that it was still valid. *See* Defendant's Affidavit at 2.

10. On May 2, 1988, at approximately 2:00 p.m., defendant went to the farm. *See* Defendant's Affidavit at 2. Plaintiff was not home. *See* Defendant's Affidavit at 2. His wife, however, was at the farm, and defendant informed her of the bankruptcy court order relaxing the stay and of his intention to execute on the Writ. *See* Defendant's Affidavit at 2. When asked of her husband's whereabouts, Mrs. Roach stated that he was at the Wal–Mart store in Stuttgart, Arkansas. *See* Defendant's Affidavit at 2–3. Defendant contacted his office, and his office located plaintiff. *See* Defendant's Affidavit at 2–3.

11. Upon returning to the farm, plaintiff was greeted by defendant. *See* Defendant's Affidavit at 3. Plaintiff's response to this greeting, "Hello, Virgil," was to say, "Kiss my ass." Defendant's Affidavit at 3. Defendant handed plaintiff a copy of the bankruptcy court order relaxing the stay and a copy of the Writ. *See* Plaintiff's Affidavit at 2. He then informed plaintiff that he was taking possession of the farm that day. *See* Plaintiff's Affidavit at 2. Defendant told plaintiff that his family should remove their personal property immediately.[2] *See* Plaintiff's Affidavit at 3.

---

**2.** It is undisputed that defendant told plaintiff to vacate the farm immediately. What defendant may have also told, or failed to tell, plaintiff is

the subject of much disagreement. The four affidavits submitted by the parties place in issue, *inter alia,* the following matters: (1) wheth-

Although plaintiff protested, saying his family could not be off the farm that day, defendant remained steadfast. *See* Plaintiff's Affidavit at 3.

12. At that point, plaintiff's family apparently began moving their personal property from the farm. *See* Defendant's Affidavit at 3. At approximately 8:15 p.m. that night, defendant entered plaintiff's home to ' determine whether his family was indeed moving. *See* Defendant's Affidavit at 4. Although it is not clear from the pleadings and exhibits, it was apparently at this time that plaintiff told defendant the following: . "I [am] not going to leave the farm willingly and [you will] have to use some force to get me off the farm." Plaintiff's Affidavit at 3. Plaintiff, or his subordinates, accepted this invitation because they then escorted plaintiff and his family off the farm. *See* Defendant's Affidavit at 4. It is undisputed that plaintiff and his wife were physically escorted off the farm. *See* Defendant's Affidavit at 4. Thereafter, at approximately 8:22 p.m., defendant took possession of the farm and sealed the farmhouse. *See* Defendant's Affidavit at 4.

13. The next day, May 3, 1988, defendant returned to the farm. *See* Defendant's Affidavit at 5. At his direction, his subordinates began removing the personal property from the farmhouse. *See* Defendant's Affidavit at 4. It is undisputed that a livestock trailer was used to transport the personal property from the farm.[3] *See* Defendant's Affidavit at 5. An inventory of some, if not all, of the personal property taken from the farmhouse was kept.[4] *See* Defendant's Affidavit at 6. The livestock found on the farm were removed and placed in the possession of John Webber.[5] *See* Defendant's Affidavit at 5. He kept several hogs in his possession until Phil Isbell picked them up. *See* Defendant's Affidavit at 5. Personal property found in a workshop was removed to another part of the farm.[6] *See* Defendant's Affidavit at 5–6.

13. During the removal of the personal property, no part of it was buried by a bulldozer at defendant's direction or because of his negligence. *See* Defendant's Affidavit at 6. Bulldozing work did occur, and some of the personal property may have been buried, but the bulldozing work was done at the direction of the new owners of the farm. *See* Defendant's Affidavit at 6.

14. Following the removal and storage of the personal property, plaintiff went to defendant's office to "talk with him about

er defendant told plaintiff's family that they would be placed under arrest if they returned to the farm once they left, (2) whether defendant failed to tell plaintiff's family that they could retrieve at a later time the personal property they failed to carry away that night, (3) whether he told them their personal property would be placed in storage or kept on the farm if not carried off that night, (4) whether defendant failed to agree, or should have agreed, to give plaintiff's family twenty-four hours to move their personal property, and (5) whether he failed to agree, or should have agreed, to give them three hours to move their personal property. However, the Court need not resolve these factual disputes because they are not *material* facts for purposes of this Order. *See Nelson v. City of McGehee*, 876 F.2d at 57 (only disputes over facts that may affect the outcome of the lawsuit under the governing substantive law will preclude the entry of summary judgment).

3. Defendant maintains that the trailer was clean and no manure was present. *See Defendant's Affidavit at 5. Plaintiff disputes this claim. *See* Plaintiff's Affidavit at 3. For purposes of this Order, the Court need not resolve this dispute; although it is interesting to note that plaintiff does not claim to have seen the trailer on May 3, 1988, the day his belongings were moved.

4. Whether defendant kept a complete inventory is not a matter the Court need resolve.

5. The Court accepts, for purposes of this Order, that defendant did not seize several chickens and they apparently died. *See* Plaintiff's Affidavit at 4.

6. Personal property found in the workshop, as well as other property found on the farm, was photographed by defendant. *See* Exhibit 4. Although it is difficult to understand how the items appearing in the photographs could have been damaged, given the condition they were in when defendant found them, the Court finds, for purposes of this Order, that some of the property was damaged. *See* Plaintiff's Affidavit at 4.

Phil Isbell's affidavit also contains certain items that he alleges defendant lost. *See* Phil Isbell's Affidavit at 2–3. Mr. Isbell is not, however, a party to this proceeding.

getting [his] property returned." Plaintiff's Affidavit at 2. Although it is the subject of much disagreement, the Court finds, for purposes of this Order, that defendant refused to speak with him about the return of his personal property.[7] *See* Plaintiff's Affidavit at 2.

■ APPLICABLE LAW. It is defendant's position that a quasi-judicial, or absolute, immunity is extended to police and other court officers for purely ministerial acts where they do nothing more than perform orders issuing from a court. Thus, because he was acting pursuant to a Writ specifically provided for in a Decree of Foreclosure, he is entitled to quasi-judicial immunity.

Defendant's statement of the law is correct. "Police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages." *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1239 (7th Cir.1986). *See also Tymiak v. Omodt,* 676 F.2d 306, 308 (8th Cir.1982) (sheriff acting pursuant to state court order immune from § 1983 suit for damages).; *Dick v. Watonwan County,* 551 F.Supp. 983, 990–991 (D.Minn.1982) (county sheriff immune from suit arising out of his execution of commitment orders where orders were valid on their face and he acted in good faith). This immunity, however, protects only those actions of the officer which were "within the scope of the immunity." *Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976).

ANALYSIS. In the case at bar, defendant was acting pursuant to a Writ of Assistance specifically provided for in a Decree of Foreclosure executed by the Chancellor of the Prairie County Chancery Court. Plaintiff does not challenge the validity of either document. Defendant is therefore entitled to quasi-judicial immunity unless it can be said that his conduct was beyond the scope of the immunity.

The responsibilities of defendant are outlined by an Arkansas legislative enactment. *Ark. Code Ann.* § 14–14–1301(a)(5)(B)(ii) and (iv) provide, respectively, that the county sheriff shall "execute all process directed to him by legal authority" and "perform all other acts and things that are required by law."

When defendant received the Writ on November 17, 1987, he was immediately informed of four important facts. First, Hall, the foreclosure sale purchaser, now owned the farm. Second, the previous owners, plaintiff's family, had refused to surrender possession of the farm. Third, defendant was ordered to take possession of the farm and then place Hall in possession. And fourth, he was to act promptly. Acting upon this information, defendant took no action which the Court can say placed his conduct beyond the scope of his legal responsibilities and therefore beyond the scope of this immunity.

■ It is undisputed that defendant contacted plaintiff on three separate occasions to inquire whether plaintiff and his family would voluntarily surrender possession of the farm. It was not until plaintiff refused for a third time that defendant took possession of the farm. It is of no consequence that defendant may have used a minimal amount of force to evict plaintiff and his family, given defendant's responsibilities as defined by the Arkansas legislature, the Writ issued by the Prairie County Chancery Court, and plaintiff's confrontational attitude and refusal to leave the farm voluntarily. It is also of no consequence that some of plaintiff's personal property may have been damaged or destroyed during the subsequent days,[8] although plaintiff may have a state cause of action for this conduct. *See Hearn v. Ayres,* 77 Ark. 497, 92 S.W. 768 (1906) (sheriff liable if he negligently disposes of property seized by virtue

---

7. Plaintiff also maintains that defendant "physically assaulted" him during their meeting. *See* Plaintiff's Affidavit at 2. The Court makes no finding on this issue because the assertion is nothing more than a boldface conclusion supported by no facts.

8. Plaintiff does not allege that defendant acted in bad faith in damaging or destroying his personal property.

of legal process). And last, it is of no consequence that defendant may have refused to speak with plaintiff about the return of the latters' personal property.

■ CONCLUSION. Given the foregoing, the Court finds that defendant is entitled to quasi-judicial immunity. For this reason, his motion for summary judgment is granted.[9] The complaint at bar is dismissed.

IT IS SO ORDERED.

---

9. Plaintiff also seeks declaratory relief. Recognizing that quasi-judicial immunity does not protect defendant in such a case, the Court has considered this claim on the merits. The undisputed facts establish that plaintiff has failed to allege, or prove, a 42 U.S.C. § 1983 cause of action. At best, plaintiff has alleged that defendant was negligent in the manner in which he acted. However, it is well established that mere negligence does not give rise to a § 1983 claim for a violation of the Due Process Clause, *see Daniels v. Williams,* 474 U.S. 327, 330–33, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986), or the Equal Protection Clause, *see Wilson v. City of North Little Rock,* 801 F.2d 316, 322 (8th Cir. 1986). Thus, his request for declaratory relief is also dismissed.