Winston HOLLOWAY, Appellant,

v.

A.L. LOCKHART, Director; Larry Norris, Warden; Major Ray Hobbs; Assistant Warden Marvin Evans; Counselor M. Owens; Grievance Officer A.W. Williams; R. Retford; Captain Kelly; Lt. Billy Taylor; NCO–1 K. Johnson; NCO–1 Mark Jimmerson; J.L. Davis; R.F. Anderson; Kevin Murphy; Tucker Maximum Security Unit, Arkansas Department of Correction, Appellees.

No. 86–1181.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1986.

Decided March 5, 1987.

Blair Arnold, Balesville, Ark., for appellant.

A. Carter Hardage, Deputy Atty. Gen., Little Rock, Ark., for appellees.

Before McMILLIAN and ARNOLD, Circuit Judges, and HUNTER,[*] Senior District Judge.

ARNOLD, Circuit Judge.

Winston Holloway, an inmate of the Arkansas Department of Correction, brought this action under 42 U.S.C. § 1983 against various officials and employees of the Department. He claimed violations of the Eighth Amendment, as applied to the states by the Due Process Clause of the Fourteenth Amendment. The District Court granted summary judgment for defendants. Because there were genuine issues of material fact, we reverse. We also hold invalid a local rule of the District Court which, with regard to "prisoner petitions," conditions any discovery on first obtaining leave of court.

## I.

The plaintiff, Winston Holloway, is a state prison inmate in the Maximum Security Unit at Tucker, Arkansas. He filed a pro se complaint under 42 U.S.C. § 1983 against several prison guards and officials alleging that they used or approved the use of tear gas in an incident that resulted in unconstitutional injury to Holloway. Because this is an appeal from a summary judgment, we state the facts as plaintiff's evidence, together with all reasonable inferences, tended to show them. Defendants dispute a number of plaintiff's factual

[*] The Hon. Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

claims, but resolution of any such disputes, including questions of credibility, must be left to the trier of fact.

Early in the morning of October 17, 1984, two or three unarmed inmates occupied the dayroom of Tucker's isolation unit. They demanded medical attention for one of the inmates and refused to leave the dayroom until he received it. In the ensuing stand-off, the guards subdued the inmates with a barrage of tear gas sprayed from a machine called a "pepper fogger."

Meanwhile, Holloway and some 20 other inmates were asleep in their individual cells near the dayroom. The cells are connected by air vents to the dayroom. The tear gas traveled from the dayroom through the air vents to every cell in Holloway's unit. The sleeping inmates awoke in a fog of tear gas, blinded and choking. Several of them lost consciousness. The gassing continued for 10 or 15 minutes, and, afterwards, a prison nurse took an oxygen tank around the unit, giving each inmate a small amount. Although one inmate was taken to the prison infirmary after the incident, the others were not given proper medical care, despite the fact that some, including Holloway, complained of injuries and requested medical attention. The inmates were not allowed to shower in order to wash off the tear gas, nor were they permitted to change their bedding or to clean their cells.

Holloway claims use of the pepper fogger was unnecessary in the first place. If inmates in the dayroom needed to be subdued, he says, hand-held canisters of tear gas, which could not have spread so far, or other devices could have been used. In addition, he argues that the prison officials knew that gas would travel through the air vents into each prisoner's cell and that they could have closed the vents and prevented the gassing by flipping a single switch before using the pepper fogger. He also claims that the authorities deliberately provided inadequate medical care after the incident, and alleges that he passed out during the incident and had difficulty breathing for days afterward. He requested a jury trial.

The defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. In response, Holloway filed a memorandum of law and six affidavits from inmates supporting his version of events. He also moved for appointment of counsel, and, claiming that the defendants were interfering with his attempts to interview inmate witnesses, he moved for an order directing the defendants to permit him to take additional affidavits and depositions. The Court denied the motion to dismiss and, because the defendants claimed that the suit was frivolous, scheduled a non-jury hearing to determine whether a jury trial was warranted. The defendants then answered the complaint, and Holloway renewed his motion for an order directing the defendants to cooperate with discovery. The Court denied this motion because it appeared that Holloway had obtained inmate affidavits in another pending lawsuit, which contradicted his alleged inability to do so in this case. However, the Court tried to facilitate Holloway's discovery by asking him to identify any inmates whom he still could not interview and to give the Court a description of their expected testimony.

On July 30, 1985, Holloway filed a request for production of documents from the defendants under Fed.R.Civ.P. 34. On December 4, 1985, Holloway filed a motion to compel production of the documents from the defendants. In his motion to compel, Holloway claimed that the defendants had neither provided the requested documents nor objected to any of the requests.

Resisting the motion to compel, the defendants claimed that some of the documents had been provided and that others were not in their possession or were confidential. The defendants also relied on a Local Rule of the District Court, which states:

"A Magistrate shall have the following responsibilities with regard to prisoner petitions:

\*  \*  \*  \*  \*  \*

"6. where appropriate, the Rules Governing Sec. 2254 Cases shall also apply to

pro se cases brought under 42: Sec. 1983. Specifically, Rule 6 of these Rules concerning discovery shall apply."

Rules of the United States District Courts for the Eastern and Western Districts of Arkansas, Rule 23(VIII)(B). Rule 6 of the Rules Governing Section 2254 Cases provides:

Leave of court required. A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure, if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

The defendants argued that Holloway had no right to compel production of any documents without complying with the Local Rule. Holloway replied that the Local Rule was invalid because it conflicted with the Federal Rules of Civil Procedure; he also claimed that the requested documents were not privileged and had not been produced. The record does not show that the District Court ever ruled on this motion before granting summary judgment, but since the motion was not granted, and at least some of the documents were never produced, we must take the District Court's action as a denial of the motion to compel.

On January 15, 1986, the defendants moved for summary judgment. They included with the motion a set of findings of fact and conclusions of law from another lawsuit, *Woods v. Norris*, No. PB–C–84–537 (E.D.Ark. Jan. 10, 1986), which arose from the same tear-gas incident at issue here. The plaintiffs in *Woods* were the inmates who had occupied the dayroom and prompted the use of tear gas, and the Court (through another District Judge) had determined that the use of tear gas was reasonable and necessary as to them and had dismissed their action. The defendants here argued that this adjudication foreclosed Holloway from relitigating the issues decided previously in *Woods*. Holloway argued that summary judgment was inappropriate because he had not been able to conduct effective discovery, because certain relevant facts had not been determined in *Woods*, and because the parties in *Woods* were not the same as the parties in the instant case.

On May 10, 1985, in the same order in which it denied defendants' motion to dismiss the complaint, the District Court had said:

Although plaintiff has requested a jury, a non-jury hearing will first be conducted to determine whether or not such a jury trial should be conducted.

*Holloway v. Lockhart*, No. PB–C–85–106 (E.D.Ark. May 10, 1985), Designated Record (D.R.) 33. This non-jury hearing took place before the District Court on January 27, 1986, and lasted about three hours. Plaintiff, whose request for counsel had been denied, appeared pro se and called eight witnesses. After he stated that his case had been "conclude[d]," Tr. 97, defendants, represented by an Assistant Attorney General, called one witness, the defendant A.L. Lockhart. Plaintiff's witnesses gave testimony which, if believed, would have established plaintiff's version of what occurred. The defendant Lockhart, who was not present during the incident and apparently had no personal knowledge of or involvement in it, testified about the pepper fogger and other ways of delivering tear gas. He stated his opinion that use of the pepper fogger was reasonable in the circumstances of this case and that plaintiff had received adequate medical care. On cross-examination, however, Lockhart appeared to confirm plaintiff's assertion that a switch could have been flipped to cut off the ventilation system, thus arguably preventing or reducing the flow of tear gas into the cells of non-combatants like the plaintiff. Tr. 107.

After defendants' testimony had been completed, Holloway complained that his request for documents had not been responded to, and asked especially for "005 forms of the incident reports made by the officers involved in this...." Tr. 113–14. Counsel for the defendants said, "I don't think I have all of them," Tr. 114, whereupon the District Court stated: "If you can find any incident reports that you have, ... we will make them part of the record in this case," Tr. 116, but also said that "I am

going to decide this case right now...." Tr. 115. Then, after announcing its decision, the Court again stated, addressing defense counsel, that "I will let you make a part of the record the incident reports ... during the recess that we are about to take." Tr. 118. (The recess referred to appears to have been an interval between Holloway's case and the next matter that the Court was to take up.) The appellees state that this was done, Appellees' Brief at 6, but, as appellant points out, Reply Brief at 5, the record contains no such indication, nor can we tell whether either plaintiff or the District Court ever saw these documents.

In any case, the Court granted defendants' motion for summary judgment, giving its reasons from the bench. The Court made Judge Overton's findings in *Woods* a part of the record and said that "I adopt his Findings and am in agreement ... that the use of the pepper fogger ... was perfectly reasonable." Tr. 117. (The Court had earlier stated, referring to the *Woods* findings, that "I am not going to relitigate that case," Tr. 63, and that "I will take judicial notice of that," Tr. 76.) The Court found that Holloway was not seriously injured, that he did inhale some gas, but that "it was simply an unfortunate by-product of necessary action which the penitentiary officials had to take against two rebellious inmates who were in the dayroom armed with weapons." Tr. 118. (Judge Overton had found that the inmates in the dayroom were armed, but the only evidence on the point before the Court in Holloway's case was to the contrary.) The Court also said that no constitutional rights were invaded, "even assuming all of the facts that Plaintiff attempted to prove in this case." Tr. 118. An order was then entered granting defendants' motion for summary judgment and dismissing the complaint with prejudice.

## II.

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds. Fed.R.Civ.P. 56(c).

This may occur when a plaintiff cannot demonstrate that a genuine fact issue exists. See *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). But the party opposing the summary judgment must be given the benefit of all favorable factual inferences, and summary judgment cannot be granted when the non-movant shows that an allegedly undisputed fact actually presents a triable issue. See, *e.g., Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077–79 (8th Cir.1980).

■ The Court below relied on several different theories in granting summary judgment. First, it reasoned that the findings of fact in *Woods* resolved any identical fact questions in this case against Holloway. The Court ruled that Holloway was, in other words, collaterally estopped to relitigate the issues determined in *Woods*. But Holloway cannot be collaterally estopped by virtue of a determination in another case in which he was neither a party nor in privity with a party. Applying collateral estoppel against him here would abrogate the fundamental requirement of due process: Holloway's claim, or part of it, would have been adjudicated in *Woods* without his having had an opportunity to be heard. See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979); see also *Hansberry v. Lee*, 311 U.S. 32, 40–41, 61 S.Ct. 115, 117–18, 85 L.Ed. 22 (1940). The findings in *Woods* cannot preclude Holloway from litigating the same issues in this case. (We note, in addition, that even if the *Woods* finding—that use of the pepper-fogger against the rebelling inmates was necessary—is accepted, Holloway still might prevail on the theory that wanton or deliberate injury was needlessly inflicted on bystanders like himself.)

■ The defendants claim that in adopting the *Woods* findings the Court did not apply collateral estoppel, but simply took judicial notice of adjudicative facts. Judicial notice is permitted of facts that are generally known within the territory of the court's jurisdiction or are capable of accurate and ready determination from a source

whose accuracy is beyond reasonable doubt. Fed.R.Evid. 201(b). The *Woods* finding that the use of tear gas against the inmates in the dayroom was reasonable and necessary falls into neither category. This is not a generally known fact, nor can it be determined readily from a reasonably indisputable source. (The fact that the judge *made* that finding in *Woods* is a judicially noticeable fact; but that fact is irrelevant in this case, unless it is used as a predicate for the application of collateral estoppel, which is inappropriate.) Whether the gassing was reasonable and necessary can be determined only by evaluating the testimony and credibility of various witnesses; this is not the kind of fact contemplated by Rule 201. See Fed.R.Evid. 201(b) Advisory Committee's Note ("With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy.").

■ The Court's second theory for granting summary judgment was that Holloway's evidence did not establish that he suffered serious injury, that he received inadequate medical attention, or that the defendants intended to harm him. But in reaching these conclusions the Court had to make findings of fact, and in doing so the Court exceeded the power it has on a motion for summary judgment. Fed.R.Civ.P. 56(c) permits summary judgment only when there is no genuine issue of material fact. Holloway submitted affidavits and live testimony that placed each fact material to his case in genuine controversy, and this was all he had to do to defeat summary judgment.

■ The defendants claim that although the Court called its ruling a summary judgment, it was in fact granting an involuntary dismissal under Fed.R.Civ.P. 41(b). We reject this contention. By its terms Rule 41(b) permits dismissal only

after a trial, and the proceeding below was not a trial. Even accepting the defendants' claim that the proceeding was a trial, Rule 41(b) does not permit dismissal in a jury trial. Holloway had requested a jury,[1] and he had a Seventh Amendment right to a jury trial. There can therefore have been no Rule 41(b) dismissal.

■ One sentence of the District Court's opinion does state the proper standard for decisions on motions for summary judgment. The Court stated, in a passage already quoted, that no constitutional rights were invaded, "even assuming all of the facts that Plaintiff attempted to prove in this case." Tr. 118. We disagree with this statement on its merits. Under *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the applicable standard in Eighth Amendment cases such as the one before us requires, as defendants emphasize, more than mere negligence. An intention to harm must be shown, otherwise described by the Supreme Court as "whether the measure taken inflicted unnecessary and wanton pain and suffering." *Id.* 106 S.Ct. at 1085. This is a difficult standard to meet, but we cannot say that plaintiff failed to raise any genuine issue of material fact. According to plaintiff's theory of the case, supported by affidavits and live testimony, it would have been possible to stop all or most of the flow of tear gas into the isolation cells simply by throwing one switch. Counsel for defendants assured us at the oral argument that this is not true, and he may well be right, but that is what trials are for. The record in this case does not permit us to reject plaintiff's theory as a matter of law. This is especially true in view of the fact that plaintiff was not allowed to make a full record through discovery, a point to which we now turn.

---

1. At the oral argument counsel for defendants informed us that the copy of the complaint served on him did not contain a jury demand. But plaintiff made a timely demand for trial by jury under Fed.R.Civ.P. 38 by filing a separate paper one week after the filing of his complaint. This "Motion For Trial By Jury" contains a certificate of service on the Attorney General of Arkansas. D.R. 9. In addition, the District Court's order of May 10, 1985, which was mailed to the Assistant Attorney General representing defendants by a Deputy Clerk of the District Court, refers to the fact that "plaintiff has requested a jury." D.R. 33.

### III.

We have already described Holloway's unsuccessful efforts at discovery, including particularly his request for production of documents, followed by a motion to compel. Defendants put forward several grounds for affirming the *de facto* ruling of the District Court on this point. The primary ground suggested for affirmance is Local Rule 23(VIII)(B)(6) of the District Court, which we have already quoted. The rule applies to a limited group of cases: pro se prisoner petitions brought under 42 U.S.C. § 1983. With respect to these cases only, it purports to supersede the generally applicable principles of discovery contained in the Federal Rules of Civil Procedure and apply instead the practice obtaining in habeas corpus actions brought by prisoners in state custody under 28 U.S.C. § 2254.[2]

■■■ District courts have power to make local rules, a power granted by Fed. R.Civ.P. 83 and 28 U.S.C. § 2071, but both of these provisions expressly state that local rules may not conflict with the Federal Rules of Civil Procedure. *Cf. Carter v. Clark*, 616 F.2d 228, 230–31 (5th Cir.1980). With some exceptions not here relevant (habeas corpus cases under 28 U.S.C. § 2254 are one of the exceptions), the Rules of Civil Procedure apply to all civil actions, Fed.R.Civ.P. 1, and an action under 42 U.S.C. § 1983 is certainly a civil action. The conflict between the local rule, which requires leave of court before filing a request for production of documents, and Fed.R.Civ.P. 34(b), which permits such requests without leave of court, is clear.[3] Accordingly, Local Rule 23(VIII)(B)(6) is invalid, and we so hold.

■■■ Defendants also suggest that they in fact produced some of the documents requested, and that the documents not produced were either confidential, irrelevant, or privileged for prison-security reasons. The District Court did not rule on these contentions, and the record before us affords no basis for ruling on the appellate level. On remand, defendants will be at liberty to assert these or any other objections to requests for production of documents made by plaintiff, and the District Court should rule on any such objections in its sound discretion.[4]

### IV.

To summarize: summary judgment for defendants is reversed, Local Rule 23(VIII)(B)(6) is held invalid, and this cause will be remanded for further proceedings

---

**2.** We note that the local rule by its own express terms speaks only to proceedings before federal magistrates, not before federal district judges. The defendants interpret the local rule to apply to § 1983 suits adjudicated by district judges as well as by magistrates, and we accept this interpretation. The rule presumably refers to magistrates because most pro se prisoner petitions in the Eastern District of Arkansas are, as a matter of practice, referred to magistrates.

In addition, we reject the defendants' claim that Holloway did not raise the issue of the validity of this rule in the District Court. He clearly did. D.R. 66.

**3.** The present case directly presents the issue of the validity of the local rule only in the specific context of Fed.R.Civ.P. 34(b). We note, however, that leave of court is generally unnecessary before undertaking discovery under the Federal Rules of Civil Procedure, including depositions, interrogatories, requests for production of documents, and requests for admissions. We have previously stated, and now reiterate, that the discovery devices of the Rules of Civil Procedure are available to pro se prisoners in § 1983 suits on the same terms as other civil litigants. *Wiggins v. Sargent*, 753 F.2d 663, 668–69 & n. 12

(8th Cir.1985). If prisoners' efforts at discovery are unreasonable or vexatious, as defendants fear, the Rules of Civil Procedure contain devices, including protective orders, that can provide ample protection.

**4.** In one respect, the record does provide us a sufficient basis for reviewing a decision of the District Court with respect to discovery. It will be recalled that Holloway moved the District Court to direct defendants to allow him to interview certain other inmates in order to obtain affidavits or depositions from them. The District Court denied this request, but invited Holloway to renew it if he could identify any inmates whom, after additional effort, he still could not interview. Holloway never furnished any such names, and in these circumstances we hold that it was not an abuse of discretion for the District Court to refuse this particular request. On remand, the matter will not arise again, because counsel will be appointed to represent Holloway, and counsel can use the normal processes of discovery contained in the rules.

consistent with this opinion. On remand, we direct that counsel be appointed to represent Holloway. The Court should reconsider the motion to compel production of documents and then proceed with this case in the ordinary course.

The complaint should be dismissed with prejudice as to the defendant Lockhart. The record clearly fails to show any personal involvement on his part, which is a necessary predicate for liability for damages under 42 U.S.C. § 1983.

It is so ordered.[5]

---

**5.** The Court expresses its gratitude to counsel for appellant, appointed by this Court, for his excellent service to his client and to the administration of justice.