UNITED STATES of America, Plaintiff,

v.

SEALTITE CORPORATION, Defendant.

No. LR–C–88–727.

United States District Court,
E.D. Arkansas, W.D.

Jan. 11, 1990.

Steven R. Baer, Environmental Enforcement Sec., Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. for plaintiff.

Miles Firnhaber, Sealtite Corp., Waukesha, Wis., for defendant.

## MEMORANDUM OPINION AND ORDER

HENRY WOODS, District Judge.

### INTRODUCTION

On October 25, 1988, plaintiff, the United States of America ("Government"), filed the complaint at bar. Its complaint was predicated upon the following claims:

1. This is a civil action for violations of the Clean Air Act (the Act), 42 U.S.C. § 7401, *et seq.*, and EPA regulations promulgated pursuant to the Act concerning asbestos emissions, by the defendant, Sealtite Corporation (Sealtite), arising out of defendant's renovation activities at the Little Rock Air Force Base in Jacksonville, Arkansas.

2. Plaintiff seeks to enjoin defendant[ ] from further violating the National Emission Standard for Hazardous Air Pollutants for asbestos (the asbestos NESHAP) promulgated by EPA under Section 112 of the Act, 42 U.S.C. § 7412, at 40 C.F.R. Part 61, Subpart M, which governs the emission of asbestos, a hazardous air pollutant. The United States also seeks the assessment of civil penalties for defendant's violations of the Act and asbestos NESHAP and the costs and fees incurred by the United States in this action.

Complaint at 1–2. Defendant, Sealtite Corporation, through its president, Miles Firnhaber, responded to the complaint on November 2, 1988 by filing motions for a change of venue and to dismiss. Both motions were later denied. *See* Order of November 17, 1988.

On March 27, 1989, the Government submitted a motion for the entry of a default judgment against defendant. The motion was predicated upon two related grounds. First, defendant had not answered the complaint despite the passage of approximately five months and the receipt of a letter from the Government calling attention to this omission. And second, not one of the pleadings submitted by defendant consti-

tuted an appearance or answer to the complaint. On April 10, 1989, John P. Buckley of Waukesha, Wisconsin notified the Court that he now represented defendant. The following day, the Court gave counsel up to, and including, May 11, 1989 in which to respond to the Government's motion for the entry of a default judgment. *See* Order of November 11, 1989. On May 4, 1989, defendant, through counsel, filed a response to the Government's motion and an answer. Approximately one week later, the Court denied the motion. *See* Order of May 10, 1989.

On May 24, 1989, counsel filed a motion to withdraw as attorney of record for defendant. The request was later granted. *See* Order of June 7, 1989. Defendant then retained the services of a second attorney, William C. Mann, III of Little Rock, Arkansas.

On July 21, 1989, the Government filed the pending motion for partial summary judgment.[1] It was the Government's position that defendant failed to do the following:

> 1) provide adequate written notification of the size of the facility, Building 480, to be renovated, as required by 40 C.F.R. § 61.146(c)(2); the nature of the planned renovation and the abatement methods to be used, as required by 40 C.F.R. § 61.146(c)(6); and the procedures to be used for compliance with subpart M of the asbestos NESHAP for renovation operations, as required by 40 C.F.R. § 61.146(c)(7), in violation of 40 C.F.R. § 61.146(c)(2), (6) and (7) and Section 112(c) and (e) of the Act, 42 U.S.C. § 7412(c) and (e); and

> 2) adequately wet friable asbestos materials that had been stripped or removed from Building 884 so that they remained wet until they were collected for disposal in accordance with 40 C.F.R. § 61.152, in violation of 40 C.F.R. § 61.147(e)(1) and Section 112(c) and (e) of the Act, 42 U.S.C. § 7412(c) and (e).

Motion at 1–2. Defendant responded to the motion on September 8, 1989.[2] In connection with the response, counsel filed a motion to be relieved as attorney of record. This request was later granted. *See* Order of September 25, 1989. Thereafter, W. Bradford Sherman of Little Rock filed a notice of his entry into the case as counsel of record for defendant.

Thus, as noted in a previous Order, the Court now considers the Government's motion submitted. A thorough review of that motion and defendant's response persuades the Court to make the following disposition of this case.

SUMMARY JUDGMENT

"A motion for summary judgment should be granted if, in viewing the evidence in the light most favorable to the non-moving party, 'there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.' " *Nelson v. City of McGehee*, 876 F.2d 56, 57 (8th Cir.1989) (citation omitted). *See also* Fed.R.Civ.P. 56. The non-moving party, in opposing the motion, must be given the benefit of all favorable factual inferences. *See Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir.1987). When a motion for summary judgment is made and supported as provided for by Rule 56, the non-moving party may not " 'rest upon the mere allegations or denials of [its] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Nelson v. City of McGehee*, 876 F.2d at 57 (citation omitted). "Only disputes over facts that may affect the outcome of the lawsuit under the governing substantive law will properly preclude the entry of summary judgment." *Id.* (citation omitted).

FACTS

 The Government, as required by Local Rule 29, has submitted a statement of the material facts it maintains are not in dispute. *See* Amended Memorandum ("Memorandum") at 2–7. This statement is

---

1. The Government filed an amended motion for partial summary judgment on September 13, 1989.

2. The affidavit of Miles Firnhaber was submitted in support of the response on October 3, 1989.

supported by three affidavits and various other exhibits.

Defendant, in an attempt to comply with Local Rule 29, has submitted a statement of the material facts it maintains are still in dispute. The Court agrees with the Government, however, that this statement is supported by no affirmative evidence. The lion's share of the "facts" identified by defendant are mere conclusions or issues to be resolved by the Court. The remaining "facts" identified by defendant as being supported by the affidavit of Miles Firnhaber are not so supported. The Court agrees with the Government that his affidavit does not place a single material fact in dispute.

Thus, it therefore follows that defendant has essentially failed to submit a statement of material facts as required by Local Rule 29. And given Local Rule 29(c),[3] the Court finds that the facts set forth in the Government's statement shall be the findings of fact of this Court. Those facts are the following:

## BUILDING 884

1. On October 21, 1987, defendant contracted with the Little Rock Air Force Base in Jacksonville, Arkansas ("the Base") to remove asbestos from pipes and associated components found in Building 884 at the Base. *See* Memorandum at 3.

2. This contract, later modified on December 8, 1987, provided that defendant would remove 682 linear feet of friable asbestos materials. *See* Memorandum at 3–4.

3. On November 4, 1987, Paula Barnes and Harold Lewis of the Arkansas Department of Pollution Control and Ecology ("ADPCE") conducted an inspection of the asbestos stripping activities of defendant in Building 884. *See* Memorandum at 5–6.

4. They observed that defendant had not adequately wet the asbestos-containing waste materials. *See* Memorandum at 6. As a result, the materials did not remain wet until collected for disposal. *See* Memorandum at 6. In addition, they found friable asbestos materials still attached to the pipe elbow in the boiler room of Building 884. *See* Memorandum at 6.

5. During their November 4, 1987 inspection, Ms. Barnes and Mr. Lewis collected testing samples from Building 884. *See* Memorandum at 6. The samples were sent to the Arkansas Department of Public Health Labs–Food Chemistry Lab for testing and analyses. *See* Memorandum at 6. The analyses of the samples showed the presence of chrysotile asbestos in Building 884. *See* Memorandum at 6.

6. Further testing and analyses of the materials taken from Building 884 revealed the presence of at least one percent asbestos by weight. *See* Memorandum at 7.

## BUILDING 480

7. On January 14, 1988, defendant contracted with the Base to remove asbestos from pipes and associated components found in Building 480 at the Base. *See* Memorandum at 3–4.

8. This contract, later modified on February 17, 1988, provided that defendant would remove 303 linear feet of friable asbestos materials. *See* Memorandum at 4.

9. On January 14, 1988, defendant notified the ADPCE of its intent to perform renovation activities in Building 480 at the Base. *See* Memorandum at 4–5. *See also* Exhibit 5.

10. The notice did not, however, specify the size of the facility being renovated. *See* Exhibit 5.

11. The notice did not reveal the abatement methods to be used in the renovation operations. *See* Exhibit 5.

12. The notice also did not reveal the procedures to be employed in order to comply with the federal requirements for renovation operations. *See* Exhibit 5.

---

**3.** "All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b)."

13. On January 26, 1988, Ms. Barnes conducted an inspection of Building 480. *See* Memorandum at 6. During this inspection, she collected various samples and sent them to the Arkansas Department of Public Health Labs–Food Chemistry Lab for testing and analyses. *See* Memorandum at 6–7. The analyses of the samples showed the presence of chrysotile asbestos in Building 480. *See* Memorandum at 7.

14. Further testing and analyses of the materials taken from Building 480 revealed the presence of at least one percent asbestos by weight. *See* Memorandum at 7.

APPLICABLE LAW

The complaint at bar alleges violations of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7401–7508. One of the many purposes of the Act is to "protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). To that end, the Administrator of the Environmental Protection Agency ("EPA") is required to publish a list of air pollutants that are determined to be hazardous and to prescribe an emission standard for each such air pollutant. *See* 42 U.S.C. § 7412(b). These emission standards are known as the National Emission Standards for Hazardous Air Pollutants ("NESHAP"). *See* 40 C.F.R. §§ 61.-01–61.247. A violation of a NESHAP standard constitutes a violation of the Act. *See* 42 U.S.C. § 7412(c)(1)(B).

■ Because the deleterious effects of asbestos exposure to humans was well known, asbestos was listed by the Administrator of the EPA as a hazardous air pollutant in 1971. *See* 36 Fed.Reg. 5931. The NESHAP for asbestos is currently set forth at 40 C.F.R. §§ 61.140–61.156. The Government's brief persuades the Court that this NESHAP provides strict liability for civil violations. *See* Memorandum at 9–10.

Because this NESHAP provides strict liability, the Government must make a mere two-fold showing. First, it must establish that the minimal threshold requirements of the NESHAP have been met. The Government's brief is succinct on this point:

The asbestos NESHAP requires each "owner or operator" [footnote omitted] of a demolition or renovation operation to comply with the work practices set forth in 40 C.F.R. § 61.147, where the amount of friable asbestos materials [footnote omitted] to be removed or stripped at the facility is at least 260 linear feet on pipes or at least 160 square feet on other facility components. 40 C.F.R. § 61.145(a).

Memorandum at 11–12. And second, it must show that the specific criteria of the NESHAP have not been satisfied. The relevant criteria are summarized in the Government's brief:

The work practices requirements [the standards for controlling asbestos emissions are expressed in the form of work practices] established in the asbestos NESHAP include notice requirements which are imposed on anyone who owns or operates an asbestos demolition or renovation operation. [Footnote omitted]. Of particular importance to the instant case, pursuant to 40 C.F.R. § 61.146(c)(2), the owner or operator of an asbestos demolition or renovation operation must provide adequate written notification of the size of the facility to be renovated. Pursuant to 40 C.F.R. § 61.146(c)(6), notice is also required of the planned renovation and the abatement methods to be used. Finally, pursuant to 40 C.F.R. § 61.146(c)(7), notice is required of the procedure to be used for compliance with Subpart M of the asbestos NESHAP for renovation operations.

The work practices applicable to this action also require the owner or operator to adequately wet the friable asbestos materials during stripping (40 C.F.R. § 61.147(d)), adequately wet the friable asbestos materials to ensure that they remain wet until collected for disposal (40 C.F.R. § 61.147(e)(1)), and discharge no visible emissions of asbestos-containing material into the outside air during removal or disposal (40 C.F.R. § 61.152(b)). Failure to follow one of the methods specified in the asbestos NESHAP for achieving these standards automatically results in liability.

Memorandum at 13–14.

ANALYSIS

■ MINIMAL THRESHOLD REQUIREMENTS OF THE ASBESTOS

NESHAP. The undisputed facts in the case at bar establish that the Government has shown the minimal threshold requirements of the asbestos NESHAP. First, defendant is an "owner or operator" [4] of a demolition or renovation operation in that it contracted with the Base to remove asbestos from pipes and associated components found in Buildings 884 and 480. And second, the amount of friable asbestos materials to be removed or stripped at each building was in excess of 260 linear feet on pipes. Thus, the only remaining question is whether defendant violated the guidelines outlined in the asbestos NESHAP.

*THE ASBESTOS NESHAP CRITERIA.* Defendant contracted with the Base to remove asbestos from Buildings 884 and 480. The Government maintains that defendant committed separate, and different, violations during the course of the removal operations at both buildings.

■ *BUILDING 884.* The Government maintains that defendant failed to adequately wet friable asbestos materials removed or stripped from Building 884, thereby ensuring that the materials remained wet until they were collected for disposal. The undisputed facts support this claim. Ms. Barnes and Mr. Lewis of the ADPCE conducted an inspection of Building 884 on November 4, 1987 and discovered that the asbestos-containing waste materials had not been adequately wet. *See* Memorandum at 5–6. In addition, they found friable asbestos materials still attached to the pipe elbow in the boiler room of the building. *See* Memorandum at 6. Thus, the Court finds that defendant failed to comply with the specific criteria of the NESHAP in removing asbestos from Building 884.

■ *BUILDING 480.* The Government also maintains that defendant failed to provide adequate written notification of its removal operations in Building 480. Spe-

cifically, the Government alleges that defendant did not provide adequate notice of the size of the facility to be renovated, the nature of the planned renovation and the abatement methods to be used, and the procedures to be used in complying with the NESHAP. The undisputed facts support this claim. The actual notice given by defendant has been filed as an exhibit by the Government, and it establishes that defendant failed to give sufficient notice. *See* Exhibit 5. Thus, the Court finds that defendant failed to comply with the notice requirements of the NESHAP in removing asbestos from Building 480.

CONCLUSION

The Court finds that the material facts are not in dispute. Applying these facts to the applicable law, the Court finds that defendant violated the provisions of the NESHAP in its removal operations in Buildings 884 and 480 at the Base. The Government's motion for partial summary judgment is therefore granted. Defendant's liability having been established, the Court will schedule a hearing on the penalties and injunctive relief to be imposed.

IT IS SO ORDERED.

---

**4.** "Owner or operator" is defined as "any person who owns, leases, operates, controls, or supervises a stationary source." 40 C.F.R. § 61.02. A "stationary source" is defined as "any building, structure, facility, or installation which emits or may emit any air pollutant which has been designated as hazardous by the Administrator." 40 C.F.R. § 61.02. The demolition or renovation contractor is considered an "owner or operator" because it "operates" the stationary source. *See* 49 Fed.Reg. 13658, 13659.