James A. WILLIAMS; Rita R. Williams, Appellants,

v.

Don A. BIRKENESS; Birkeness Chiropractic Clinic; Harry Lounce; Spelman–St. Luke's Hospital; Socorro S. Lampa, Appellees.

No. 93–3630.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1994.

Decided Sept. 8, 1994.

Rehearing Denied Oct. 4, 1994.

**696**

Timothy Bosler, Kansas City, MO, argued, for appellant.

William E. Quirk, Kansas City, MO, argued (Qilliam E. Quirk, Kirk J. Goza and Michael D. Moeller, on the brief), for appellee Lounce.

David Erickson, Overland Park, KS, argued, for Spelman–St. Luke's Hosp. and Socorro S. Lampa. (Peter S. Obetz, on the brief, for appellee Spelman–St. Luke's Hosp.), for appellees.

Walter Simpson, Kansas City, MO, argued, for Don A. Birkeness and Birkeness Chiropractic Clinic (James G. Lindquist on the brief, for Birkeness) for appellees.

Before FAGG, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

FAGG, Circuit Judge.

Complaining of aches between his shoulders and tightness in his throat, James A. Williams consulted chiropractor Don A. Birkeness. Dr. Birkeness treated Williams's back pain with chiropractic manipulation. After several treatments, Williams's pain worsened and he experienced nausea, which Dr. Birkeness attributed to the back pain. When his pain became more severe and spread to his chest, Williams went to the emergency room at Spelman–St. Luke's Hospital. There, nurse Socorro S. Lampa took Williams's medical history and physician Harry Lounce examined Williams. Dr. Lounce diagnosed Williams's back and chest pain as non-life-threatening inflammation of his chest cartilage, prescribed an anti-inflammatory medication, and discharged Williams with instructions to see his own family doctor. About three weeks later, Williams suffered a heart attack resulting in permanent heart muscle damage.

Williams and his spouse brought this lawsuit in state court against Dr. Birkeness and his clinic, Dr. Lounce, the hospital, and Ms. Lampa (the appellees), claiming the appellees negligently treated Williams. The Williamses' lawsuit also claimed the hospital violated the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd(a) (Supp. IV 1992). After the lawsuit was removed to federal court based on the Williamses' EMTALA claim, the district court granted summary judgment to the hospital on the EMTALA claim but retained jurisdiction over the nonfederal negligence claims. See 28 U.S.C. § 1441(c) (1988). Before submitting the Williamses' negligence claims to the jury, the district court granted judgment as a matter of law (JAML) for the appellees.

■ On appeal, the Williamses contend the district court erroneously granted the hospital's motion for summary judgment on their EMTALA claim. The EMTALA requires hospitals to provide any individual seeking treatment "an appropriate medical screening examination within the capability of the hospital's emergency department." 42 U.S.C. § 1395dd(a). The Williamses contend the hospital failed to provide Williams an "appropriate medical screening" because his heart condition was not correctly diagnosed. Interpreting "appropriate medical screening" to mean uniform treatment rather than correct diagnosis, the district court granted summary judgment because the Williamses did not show the hospital treated Williams differently from other patients. We conclude the district court correctly interpreted § 1395dd(a). *See Brooks v. Maryland Gen. Hosp., Inc.,* 996 F.2d 708, 710–11 (4th Cir. 1993) (agreeing with D.C. Circuit and 6th Circuit that § 1395dd(a) requires uniform treatment of all patients but does not require correct diagnosis).

■ The Williamses also contend summary judgment was improper even if the district court correctly interpreted § 1395dd(a) because the hospital did not show it had a uniform screening procedure for a patient presenting Williams's symptoms. We disagree. Under *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), summary judgment was proper because the Williamses failed to show the hospital treated Williams differently from other patients, an essential element of a claim under § 1395dd(a). *See Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1041 (D.C.Cir.1991). To prevail on its summary judgment motion, the hospital was not required to disprove the Williamses' claim by showing all patients were treated the same. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

■ The Williamses also challenge the district court's grant of JAML to the appellees on the Williamses' negligence claims. The district court held the appellees were entitled to JAML because Williams's failure to follow medical advice and to seek medical treatment when his symptoms worsened intervened and broke the causal connection between the appellees' alleged negligence and Williams's injury. We review the district court's grant of JAML de novo, affirming if the evidence viewed in favor of the Williamses points to "but one reasonable conclusion [about] the verdict" for the appellees. *See Medtronic, Inc. v. Convacare, Inc.,* 17 F.3d 252, 255 (8th Cir.1994).

■ The Williamses first argue JAML was improper because Missouri law does not permit a plaintiff's intervening conduct to supersede a defendant's negligence. Reviewing the district court's interpretation of state law de novo, *McNicholes v. Subotnik,* 12 F.3d 105, 107 (8th Cir.1993), we agree with the district court that under Missouri law a plaintiff's intervening conduct may be an independent cause absolving a negligent defendant from liability. *See Eidson v. Reproductive Health Servs.,* 863 S.W.2d 621, 626–27 (Mo.Ct.App.1993); *Vann v. Town Topic, Inc.,* 780 S.W.2d 659, 661–62 (Mo.Ct.App.1989).

■ The parties agree that Dr. Lounce instructed Williams to see his family doctor for a follow-up examination and to seek medical treatment if he experienced other symptoms. Additionally, Williams testified he understood Dr. Lounce's instructions but chose not to comply. Further, Williams admitted he was aware of his family history of heart disease and realized when his symptoms worsened that he might be having a heart attack, but chose to return to work and try to ignore his symptoms. When Williams finally sought medical treatment the following afternoon, nearly three weeks after Dr. Lounce's emergency room examination, doctors concluded he had already suffered a heart attack. The Williamses' own expert witnesses testified Williams would have avoided his heart attack if he had followed Dr. Lounce's discharge instructions. The undisputed evidence thus shows Williams's conduct was "a new and independent force" that was "the responsible, direct, and proximate cause of [his] injury." *See Eidson,* 863 S.W.2d at 626–27; *see also Van Vacter v. Hierholzer,* 865 S.W.2d 355, 359 (Mo.Ct.App.1993) (plaintiff's failure to follow medical advice after defendant physicians' alleged negligence

could be proximate cause of plaintiff's injury).

The Williamses argue, however, that Williams's conduct could not be an intervening cause because his failure to seek medical treatment was foreseeable. *See Schaffer v. Bess,* 822 S.W.2d 871, 877 (Mo.Ct.App.1991) (intervening cause may not be "a foreseeable and natural result of the original negligence"). We disagree that the appellees should have foreseen Williams would ignore medical instructions and fail to seek medical care when he realized he might be having a heart attack.

In view of our holding that Williams's failure to seek timely medical treatment intervened between the appellees' alleged negligence and Williams's injury, we need not consider the district court's alternative grant of JAML based on the Williamses' failure to make an adequate showing of negligence on the part of any of the appellees. We also need not reach the Williamses' other contentions.

Accordingly, we affirm.