Jessie L. REPP, individually and as administrator of the estate of Kenneth D. Repp, deceased, and William Craig Repp, Wallace Todd Repp, and Robert Dale Repp, children of Kenneth Repp, deceased, Plaintiffs–Appellants,

v.

ANADARKO MUNICIPAL HOSPITAL, Jay Belt, D.O., Anadarko Family Medical Clinic, P.C., and C. Bilyeu, L.P.N., Defendants–Appellees.

No. 93–6408.

United States Court of Appeals, Tenth Circuit.

Dec. 19, 1994.

---

Carla L. Harcourt, of Law Offices of Carla L. Harcourt, Oklahoma City, OK, and Jon W. Norman and Emmanuel E. Edem, of Norman & Edem, P.C., Oklahoma City, OK, for plaintiffs-appellants.

A. Scott Johnson, Mary Hanan, and Michael J. Heron, of A. Scott Johnson and Associates, P.C., Oklahoma City, OK, for defendants-appellees Anadarko Mun. Hosp. and Nurse Bilyeu.

John Wiggins, of Oklahoma City, OK, for defendants-appellees Jay Belt, D.O. and Anadarko Family Medical Clinic, P.C., Short, Wiggins, Margo & Adler, of counsel.

Before TACHA and BRORBY, Circuit Judges, and KANE, District Judge.*

TACHA, Circuit Judge.

Plaintiffs brought suit under 42 U.S.C. § 1395dd, a provision of the Emergency Medical Treatment and Active Labor Act ("EMTALA"). Defendants moved for summary judgment, which the district court granted for all defendants. Plaintiffs appeal,

---

* Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

alleging that defendant Anadarko Municipal Hospital violated its own policies and did not provide Kenneth Repp with proper emergency care. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.[1]

## I. BACKGROUND

In the afternoon of March 26, 1992, Mr. Repp made an outpatient visit to defendant Dr. Jay Belt, complaining of a rash. Belt diagnosed Mr. Repp as having shingles and prescribed medication. Later that same day, Mr. Repp began to experience pain throughout his left arm. He sought emergency care from Anadarko Municipal Hospital ("the Hospital"). Two nurses, Patricia Self and defendant Carolyn Bilyeu, examined Mr. Repp and recorded his vital signs. Plaintiff Jessie Repp informed the nurses that Mr. Repp had previously undergone cardiac bypass surgery.

After observing Mr. Repp, Bilyeu telephoned Belt at his home. She reported that Mr. Repp was experiencing pain in his arm. Belt told Bilyeu to give Mr. Repp two different injections of medications. After Bilyeu administered the injections, Mr. Repp returned home, where he died in his sleep later that night. The cause of death was determined to be cardio pulmonary arrest due to coronary artery disease.

Plaintiffs brought this action for violations of EMTALA, 42 U.S.C. § 1395dd. They alleged that defendants did not provide an "appropriate medical screening" as defined in section 1395dd(a). They also contended that defendants did not properly stabilize Mr. Repp's condition as required by sections 1395dd(b) and (c).[2]

Defendant Belt filed a motion to dismiss, claiming that individual physicians could not be sued under EMTALA. The district court, relying on *Delaney v. Cade,* 986 F.2d 387 (10th Cir.1993), granted Belt's motion. Defendant Anadarko Municipal Hospital moved for summary judgment, contending that no

dispute existed as to material facts that could show that the Hospital had violated EMTALA. The district court granted the Hospital's summary judgment motion on both the section 1395dd(a) claim and the claim that Mr. Repp had not been properly stabilized. On appeal, plaintiffs contend only that the Hospital did not give Mr. Repp an "appropriate medical screening," so that summary judgment was improper as to their section 1395dd(a) claim. We confine our review to this single issue.

## II. DISCUSSION

We review grants of summary judgment *de novo. Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464, 1468 (10th Cir.1993). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, we must review the evidence in the light most favorable to the nonmoving party. *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir. 1992).

The relevant portion of EMTALA states:

In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an *appropriate medical screening* examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ... exists.

42 U.S.C. § 1395dd(a) (emphasis added). Section 1395dd(d)(2)(A) grants a personal right of action to "[a]ny individual who suffers personal harm as a direct result of a

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Plaintiffs additionally brought a state malpractice action against all defendants. The federal action, however, was directed only against defendants Anadarko Municipal Hospital and Belt.

participating hospital's violation of a requirement of this section."[3]

■ To assess plaintiffs' claim under section 1395dd(a), we must interpret the ambiguous phrase "appropriate medical screening." Congress did not explicitly define the term in the statute. Plaintiffs urge the court to adopt a standard that gives substantive content to the word "appropriate"; in other words, plaintiffs interpret section 1395dd(a) as requiring hospitals to provide a uniform minimum level of care to each patient seeking emergency room care. In response, defendant hospital argues that a substantive reading of "appropriate" would convert EMTALA into a national malpractice statute—a result which, according to defendants, greatly exceeds Congress' intent.

In addressing a claim under section 1395dd(c) of EMTALA, this court recently stated that the Act "is neither a malpractice nor a negligence statute." *Urban v. King,* No. 93–3331, 1994 WL 617521 at *4 (10th Cir. Nov. 8, 1994). Similarly, we believe that the language of section 1395dd(a) precludes the adoption of a standard tantamount to a federal malpractice statute. *Accord Holcomb v. Monahan,* 30 F.3d 116, 117 (11th Cir.1994) ("[N]o federal malpractice claims are created."); *Baber v. Hospital Corp. of America,* 977 F.2d 872, 879 (4th Cir.1992) ("EMTALA does not impose on hospitals a national standard of care in screening patients."); *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1041 (D.C.Cir.1991) ("[W]e cannot agree that [EMTALA] creates a sweeping federal cause of action with respect to what are traditional state-based claims of negligence or malpractice."); *see also Collins v.*

*DePaul Hospital,* 963 F.2d 303, 307 (10th Cir.1992) (quoting language in *Gatewood* stating that section 1395dd(a) was not intended " 'to ensure each emergency room patient a correct diagnosis, but rather to ensure that each is accorded the same level of treatment regularly provided to patients in similar medical circumstances.' "). The phrase that modifies "appropriate medical screening" reveals that the requisite standard, far from being uniform, varies with the particular conditions of each individual emergency room. Section 1395dd(a) does not require a hospital to provide a medical screening in the abstract, but one that is appropriate "within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department." Thus, the statute's requirement is hospital-specific, varying with the specific circumstances of each provider.

We believe that a hospital defines which procedures are within its capabilities when it establishes a standard screening policy for patients entering the emergency room.[4] Indeed, hospitals, and not reviewing courts, are in the best position to assess their own capabilities. Thus, a hospital violates section 1395dd(a) when it does not follow its own standard procedures.[5] *Accord Baber,* 977 F.2d at 881 ("[A] hospital satisfies the requirements of § 1395dd(a) if its standard screening procedure is applied uniformly to all patients in similar medical circumstances."); *Gatewood,* 933 F.2d at 1041 ("[A] hospital fulfills the 'appropriate medical screening requirement' when it conforms in its treatment of a particular patient to its standard screening procedures.").[6]

---

**3.** "The term 'participating hospital' means [a] hospital that has entered into a provider agreement under section 1395cc." 42 U.S.C. § 1395dd(e)(2). Defendant concedes that it is a participating hospital within the meaning of the Act.

**4.** *But see Baber,* 977 F.2d at 879 n. 7 ("Our holding, however, does not foreclose the possibility that a future court faced with such a situation may decide that the hospital's standard was so low that it amounted to *no* 'appropriate medical screening.' "). Our holding today clearly rejects the possibility left open by the Fourth Circuit in *Baber.* A court should ask only whether the hospital adhered to its own procedures, not

whether the procedures were adequate if followed.

**5.** As we have noted before, EMTALA imposes "a 'strict liability' on a hospital which violates [its] requirements." *Abercrombie v. Osteopathic Hosp. Founders Ass'n,* 950 F.2d 676, 681 (10th Cir.1991). If a hospital's emergency room does not provide an "appropriate medical screening" as defined in this opinion, it is strictly liable.

**6.** *But see Williams v. Birkeness,* 34 F.3d 695, 697 (8th Cir.1994) (Plaintiffs must show that hospital treated patient "differently from other patients."); *Cleland v. Bronson Health Care Grp., Inc.,* 917 F.2d 266, 272 (6th Cir.1990) ("Appro-

■ Of course, this standard does not mean that any slight deviation by a hospital from its standard screening policy violates EMTALA. Mere *de minimus* variations from the hospital's standard procedures do not amount to a violation of hospital policy. To hold otherwise would impose liabilities on hospitals for purely formalistic deviations when the policy had been effectively followed.

■ In this case, plaintiffs allege two departures from Anadarko Medical Hospital's standard emergency room screening procedures: (1) that the nurses did not take a complete medical history; and (2) that the nurses did not ask Mr. Repp for a complete list of medications that he was taking. The Hospital's policy states that "[e]ach patient on admission shall have a history of present illness; including but not limited to the following: ... (c) Pre-existing conditions [and] (d) Medications and allergies." Even though the nurses did not ask specific questions about these items, they received information on each subject. When Mr. Repp entered the emergency room, Mrs. Repp informed the nurses that Mr. Repp had previously suffered a heart attack and had seen Belt earlier in the day concerning shingles; Mrs. Repp also stated that Mr. Repp was taking Zantac and Phenaphen. These minimal variations from the hospital's emergency room policy did not amount to a violation of the hospital's standard screening procedures.

## III. CONCLUSION

For these reasons, we find that a hospital provides an "appropriate medical screening" within the meaning of section 1395dd(a) when it follows its standard emergency room screening procedures. In this case, defendant Anadarko Municipal Hospital did not violate its standard screening procedures when it examined Mr. Repp. The decision of the district court granting summary judgment is therefore AFFIRMED.

priate" refers to "the motives with which the     hospital acts.").