**Harold SUMMERS, Appellant,**

v.

**BAPTIST MEDICAL CENTER ARKADELPHIA, Appellee.**

No. 95–1468.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1995.

Decided Nov. 9, 1995.

Order Granting Rehearing En Banc and Vacating Opinion Jan. 18, 1996.

Troy L. Henry, Jonesboro, AR, argued, for appellant.

Stuart P. Miller, Little Rock, AR, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

Harold Summers appeals the district court's grant of summary judgment for Baptist Medical Center (Baptist) on Summers' claim under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd(a) (Supp.1995).[1] Because Summers presented a genuine issue of material fact, we reverse.

## I. BACKGROUND

■ Summary judgment is appropriate only when there is no genuine issue as to any material fact so that the dispute may be decided solely on legal grounds. Fed. R.Civ.P. 56(c); *Holloway v. Lockhart*, 813

F.2d 874, 878 (8th Cir.1987). Reviewing the district court's grant of summary judgment, we consider the facts presented to the district court in a light most favorable to Summers, the non-moving party.

On October 25, 1992, Summers was taken by ambulance on a spinal board to the emergency room at Baptist after he had fallen from a tree stand while hunting. Emergency room staff, nurse Paul Toll and physician Dr. Griffith H. Ferrell, attended to Summers, who complained of severe pain in his head, back, and chest. Summers also told them that he could hear a snapping and popping noise in his chest when he breathed. Nurse Toll took Summers' medical history, which included prior lower back injuries, and gave Summers a physical examination. Dr. Ferrell ordered a series of spinal x-rays. He did not, however, request an x-ray of Summers' chest area, which would have revealed Summers' injury. After review of the x-rays and further physical examination of Summers, Dr. Ferrell determined that Summers did not have any new fractures and that his chest pain was due to muscle spasms. Dr. Ferrell gave Summers muscle relaxants and an injection for pain, told him to apply heat, and to see his personal physician the next day. Summers requested to stay at the hospital overnight, indicating that he did not feel up to the over-five-hour drive back home. Dr. Ferrell denied the request, stating that he did not think Summers' condition warranted hospitalization.

Two days later, after staying at home in bed due to his pain, Summers was taken by ambulance to St. Bernard's Hospital where he was diagnosed with an acute comminuted fracture of one of his vertebrae, a sternal fracture, and multiple rib fractures that led to bilateral hemo-pneumothoraces. Summers spent fourteen days in St. Bernard's intensive care unit for his condition.

## II. DISCUSSION

Summers claims that Baptist failed to provide him with an appropriate medical screen-

---

[1]. At oral argument, Summers also moved to strike Baptist Medical Center's addendum, consisting of supplemental responses to Summers' interrogatories. We deny this motion and have considered all of the evidence before us.

ing examination in violation of EMTALA. 42 U.S.C. § 1395dd. Section 1395dd(a) requires emergency rooms to provide all patients with an "appropriate medical screening examination" to determine whether or not an emergency medical condition[2] exists. 42 U.S.C. § 1395dd(a).

■■■ Although the statute does not define "appropriate," we have interpreted it to mean uniform, non-discriminatory medical treatment. *Williams v. Birkeness,* 34 F.3d 695, 697 (8th Cir.1994) (citing *Brooks v. Maryland Gen. Hosp., Inc.,* 996 F.2d 708, 710–11 (4th Cir.1993), and noting agreement with the D.C. and Sixth Circuits). EMTALA is not a federal malpractice statute and it does not set a national emergency health care standard; claims of misdiagnosis or inadequate treatment are left to the state malpractice arena. *Williams,* 34 F.3d at 697. Nor is EMTALA an anti-discrimination statute that requires a plaintiff to prove that he was "dumped" or that his treatment was motivated by a particular type of discrimination.[3] Rather, EMTALA requires hospitals to develop screening procedures that identify critical conditions and to apply the procedures uniformly to all patients. All patients complaining of the same problem or exhibiting the same symptoms must receive similar screening examinations from a given emergency room. *Williams,* 34 F.3d at 697; *Baber v. Hospital Corp. of Am.,* 977 F.2d 872, 879 (4th Cir.1992). Thus, not all medical malpractice claims can be converted into EMTALA actions.

■■■ Applying the correct standard, the district court concluded that Summers failed to produce any evidence that Baptist would have given another patient in the same condition as Summers additional x-rays or different treatment. We disagree.

Baptist has developed general screening procedures by which incoming patients are to be treated based upon that patient's complaints, symptoms, and medical history. More specifically, during his deposition Dr. Ferrell stated that under these screening procedures, had Summers complained of chest pain, as Summers claims he did, Baptist should have provided the plaintiff with a chest x-ray. Thus, it is essential that a trier of fact determine whether or not Summers made such a complaint. Dr. Ferrell does not recall Summers complaining of chest pain. Summers, on the other hand, insists that he complained of pain in his chest and difficulty in breathing. If Dr. Ferrell's recollection is correct, then Summers does not have a cause of action under section 1395dd(a). EMTALA is not intended to be a substitute for a medical malpractice action. If, however, one believes Summers' testimony, then Baptist did not give Summers the screening examination that Dr. Ferrell concedes Baptist provides to persons with complaints of that nature.

Given the posture of this case, we conclude that Summers has demonstrated that there is an issue of fact as to what symptoms Summers presented at the emergency room. The factual issue is material and must be decided by a factfinder to resolve whether Baptist failed to uniformly apply its screening procedures as required under EMTALA.

---

2. The statute defines "emergency medical condition" as:

[A] medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

(i) placing the health of the individual ... in serious jeopardy,

(ii) serious impairment to bodily functions, or

(iii) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1395dd(e)(1)(A) (Supp.1995).

3. It is undisputed that Summers informed Baptist that he had insurance and that he had money to pay for hospitalization. Summers' ability to pay does not deny him an EMTALA claim. Although Congress originally enacted EMTALA to prevent hospitals from denying treatment based on a patient's inability to pay, the statute's plain language applies to "any individual." 42 U.S.C. § 1395dd(a); *see* H.R.Rep. No. 241(I), 99th Cong., 2d Sess. 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 605; *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1040 (D.C.Cir. 1991) (acknowledging this history yet concluding the statute applies to any individual seeking emergency room assistance). We must construe the statute as it has been written. If Congress wishes to narrow the statute's application, it may amend the statutory language.

We therefore reverse the district court's grant of summary judgment and remand this case to the district court for the appropriate fact finding and resolution of Summers' claim.

RICHARD S. ARNOLD, Chief Judge, dissenting.

I think the District Court was right to dismiss this complaint, and write briefly to explain why.

This Court's reason for reversal is simple and easily grasped: Mr. Summers says he complained of chest pain. Dr. Ferrell does not remember any such complaint, but concedes that patients who complain of chest pain are normally given a chest x-ray. Mr. Summers was given no such x-ray. Therefore, if in fact he did complain of chest pain (a dispute of fact that would require a trial if it is material), Mr. Summers was treated differently from the hospital's normal practice.

The syllogism is neat—in my view, too neat, because it converts the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, into a federal malpractice statute, a result disavowed by the plaintiff and this Court alike. Consider the following: a hospital's normal screening procedure for emergency patients is to treat them with due care. (Presumably every hospital would say this.) There is a genuine issue of material fact as to whether a certain patient was treated with due care. Therefore the patient is entitled to go to trial on the issue whether he was treated differently from other patients. I take it that all would acknowledge the error of this proposition, as it would completely obliterate any distinction between EMTALA and a state-law claim for negligence.

This statement of the issue is at the highest level of generality, of course. The problem with the Court's approach in this case is that it will always, if logically applied, convert any malpractice claim into an EMTALA case, with the possible exception of cases (of which this is not one) in which there is a substantive disagreement about the appropriate standard of care in given factual circumstances. Take an example at what may be an intermediate level of generality, an example taken from the very case before us. Dr. Ferrell testified, as any physician would, that it is "necessary to obtain a complete, *accurate* history," App. A–25 (emphasis mine), from patients who fall and are brought in immobilized. The history obtained here did not contain the fact (or what Mr. Summers says is a fact) that the plaintiff complained of chest pain. Therefore, this patient was not given the screening normally given to other patients. Q.E.D. This very argument, or something very near to it, appears in the Appellant's Reply Brief, p. 4. It is only a variation of the reasoning adopted by the Court in its opinion today. Yet, it would allow an EMTALA action any time a plaintiff's medical history is inaccurately taken.

The fact is that Mr. Summers was treated (whether correctly or not) exactly as any other patient would have been. Let's assume he complained of chest pain. There is no proof that anyone else complaining of chest pain would have been given a chest x-ray on this particular day. If Dr. Ferrell didn't hear Mr. Summers, or if he ignored his patient's complaint, the doctor may be guilty of malpractice (a question on which I express no view), but, so far as this record shows, he would have made the same mistake with any other patient.

The Court concedes that under *Williams v. Birkeness,* 34 F.3d 695 (8th Cir.1994), an EMTALA plaintiff must show "that the hospital treated [him] . . . differently from other patients." *Id.* at 697. Williams claimed a heart condition was not correctly diagnosed. Exactly the same argument that the Court accepts here could be made in the *Williams* situation: "I was seen at the emergency room and diagnosed with a non-life-threatening inflammation of my chest cartilage; in fact, I had a heart condition that later caused a heart attack; patients with such a heart condition are normally treated more intensively than I was." The Court's rationale in the present case, as a matter of logic, is inconsistent with the holding in *Williams* "that § 1395dd(a) requires uniform treatment of all patients but does not require correct diagnosis." 34 F.3d at 697.

Maybe Dr. Ferrell isn't remembering correctly what Mr. Summers said. This would be understandable in view of the fact that the doctor was working 80 hours a week at four different hospital emergency rooms. Reply Brief 3. But if a mistake was made, it should have been pursued in a tort action in the state courts (there being no diversity of citizenship). Mr. Summers was not dumped. He was not discriminated against for financial or any other reasons. I believe he has no claim under EMTALA as that statute has, until now, been uniformly interpreted. I respectfully dissent.

### ORDER

#### Jan. 18, 1996

Appellee's petition for rehearing with suggestion for rehearing en banc has been considered by the court and is granted. The opinion and judgment of the court entered on November 9, 1995, are vacated.

The en banc argument will be Tuesday, April 9, 1996, at 3:00 p.m. in St. Louis, MO.