## JARMAN v. UNITED STATES.
### No. 4191.

Circuit Court of Appeals, Fourth Circuit.
Sept. 27, 1937.

Carlton Sard, of Washington, D. C. (Maurice D. Rosenberg, of Washington, D. C., on the brief), for appellant.

H. H. Holt, Jr., Asst. U. S. Atty., of Norfolk, Va. (Sterling Hutcheson, U. S. Atty., of Richmond, Va., and John M. Sullivan, Sp. Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

Before PARKER and SOPER, Circuit Judges, and H. H. WATKINS, District Judge.

HENRY H. WATKINS, District Judge.

This is an appeal from an order of the court below dismissing appellant's petition for release on writ of habeas corpus from the District of Columbia Reformatory at Lorton, Va. The petition was filed on December 7, 1936. The facts as alleged in the petition are admitted in the return and only conclusions of law are in controversy. Jarman, after being convicted of house-breaking and larceny, was sentenced on January 19, 1928, by the Supreme Court of the District of Columbia, to imprisonment in the penitentiary for ten years. The designated place of his confinement was the District of Columbia Reformatory, at Lorton, Va. Under the law in effect at that time (18 U.S.C.A. § 710) his sentence, if credited with good-time allowance, would have expired on October 3, 1934. On January 25, 1932, he was granted a parole by the Federal Board of Parole under the authority of section 716, title 18 U.S.C.A. At that time there was no separate Parole Board for the District of Columbia, but on July 3, 1932, Congress created a Board of Indeterminate Sentence and Parole for the District of Columbia. 47 Stat., 696, chapter 492, Sections 1 to 7 and 9; Supplement II to the District of Columbia Code, title 6, §§ 451–458. In granting the parole the Board imposed certain statutory and regulatory conditions, among which were

that the prisoner should remain in the limits of the District of Columbia and also that he would abide by certain conditions set out in an agreement which he signed, one of which was that he would live and remain at liberty without violating the law. On August 1, 1934, while on parole, Jarman was arrested on a charge of forgery and confined in the Washington, D. C., asylum and jail where he remained, except for brief trips to court in the custody of the marshal, until the 21st day of February, 1935, when he was transferred to the District of Columbia Reformatory at Lorton, Va. A presentment and indictment was filed against him on said charge on October 31, 1934, and on November 9, 1934, he was arraigned and entered a plea of not guilty. The case was called for trial on January 23, 1935, and the following day a verdict of guilty was returned by the jury. Motion for a new trial was argued and overruled on February 1st and, on March 12th, Jarman was sentenced to the penitentiary for one year to one year and six months to take effect upon expiration of the ten-year sentence imposed on January 19, 1928. Meanwhile on the 31st of January, 1935, the chairman of the United States Board of Parole issued his warrant for the arrest of Jarman, reciting therein that satisfactory evidence had been presented that the prisoner had violated his parole and declaring him to be a fugitive from justice. On the 4th day of February the director of the Bureau of Prisons designated the District of Columbia Reformatory at Lorton, Va., as the place for the further confinement of Jarman. On March 5, 1935, at the said District of Columbia Reformatory, where he was then a prisoner, Jarman was given a personal hearing on his alleged violation of parole by and before the Board of Indeterminate Sentence and Parole for the District of Columbia, all members being present, and, Jarman then having already been convicted on a new charge, the Board entered an order revoking his parole. Although then in custody and personally present, Jarman did not then file any objection to the hearing, did not raise any issue as to the illegality of his arrest or as to any irregularity in the proceedings, nor did he subsequently take any appeal from the decision. However, after a lapse of more than a year and nine months, a period exceeding the sentence in the forgery case, he filed his petition for habeas corpus as above stated, based upon three legal grounds, briefly stated as follows: (1) That the warrant of arrest was not supported by oath or affirmation as required by the Fourth Amendment to the Federal Constitution. (2) That the Federal Board of Parole, which issued the warrant, had lost its authority over the petitioner because of the creation of the Board of Indeterminate Sentence and Parole for the District of Columbia. (3) That the Parole Board at the time of issuing the warrant had lost jurisdiction because the sentence expired on October 3, 1934, and the warrant was not issued until January 31, 1935. The District Judge denied the prayer of and dismissed the petition in a general formal order without setting forth his specific reasons therefor. The appeal charges that the District Judge committed error (1) in holding that the warrant issued by the Federal Board of Parole for violation of parole conditions is not required to be supported by oath or affirmation; (2) in holding that the Federal Parole Board had authority, after the creation of the Board of Indeterminate Sentence and Parole, to issue the warrant of arrest; and (3) in holding that the Board of Indeterminate Sentence and Parole had jurisdiction to revoke the parole on the warrant of arrest issued by the Federal Board of Parole. In appellant's brief it is stated that the contention set forth in the petition that the minimum sentence expired on October 3, 1934, and, as the warrant was not issued until January 31, 1935, that the action of the Board was void as he was then released from parole, is a contention not argued before the lower court and is not presented in this appeal.

Appellant does not deny, indeed he maintains, that the new Board after its creation had jurisdiction both to issue the warrant for the arrest of Jarman for his alleged violation of the parole, and after a proper hearing to revoke the parole for good reason shown. If, therefore, the circumstances of the case show that irrespective of the manner of, and the authority for, issuing the warrant, Jarman had a fair hearing and that he is now foreclosed of raising the issue as to the regularity of, or authority for issuing the warrant, because of his failure to make timely objection thereto, or because of his failure after the decision of the Board to prosecute an appeal therefrom, all other questions become moot. And, we are of

opinion that the issues thus presented have been conclusively ·determined by numerous decisions of the courts, and particularly by the case of United States ex rel. Rowe v. Nicholson, Superintendent, etc. (C.C.A.4) 78 F.(2d) 468, 471. Here it was held that a delay of almost a year in making objection to alleged informality in the hearing on the question of revoking his parole amounted to acquiescence in the procedure followed. It was also held that in a habeas corpus proceeding it was not competent to attack the formal certificate of the Board, which recited that a hearing was given and the parole revoked, because this would constitute a collateral attack on such certificate. There, as here, the Parole Board was not a party to the habeas corpus proceeding and so far as the record discloses had no notice of its pendency. As the court said in Rowe's Case, "It would promote confusion in the administration of the parole law to permit such collateral attacks on the Board's formal action." In that case petitioner alleged that only one member of the Parole Board was present at the hearing accorded him and that the subsequent revocation of his parole by the entire Board was in his absence and over his objection. In the instant case, Jarman admittedly was given a personal hearing before the entire Board and, instead of waiting less than a year as in Rowe's Case, he waited a little over a year and nine months before raising any issue or taking any action whatever. The court further held that the remedy of a prisoner not given a proper hearing by a Parole Board before revocation of his parole lies in direct mandamus proceeding against the Board in the proper jurisdiction rather than by way of habeas corpus. In the case of Escoe v. Zerbst, Warden, 295 U.S. 490, at page 494, 55 S.Ct. 818, 820, 79 L.Ed. 1566, the court said: "When a hearing is allowed but there is error in conducting it or in limiting its scope, the remedy is by appeal. When an opportunity to be heard is denied altogether, the ensuing mandate of the court is void, and the prisoner confined thereunder may have recourse to habeas corpus to put an end to the restraint." See, also, Redman v. Duehay (C.C.A.) 246 F. 283.

■ In view of these decisions, we deem it unnecessary to determine whether information under oath should have been furnished to give validity to the warrant issued, or to determine whether the warrant should have been issued by the new Board instead of the old. We think, however, that it is proper to observe that the warrant in question was not a warrant for the arrest of one to be charged with and tried for a crime, nor for search and seizure of property, as contemplated in the Fourth Amendment to the Constitution. Here Jarman was already under arrest and, at the time of the revocation of his parole, had for some time been confined in the very reformatory from which he had been paroled. During the whole period of his parole, although at large, he was within the legal custody of the warden of said reformatory. Since he was not to be tried upon any charge contained in the warrant for his arrest, the issuance of the warrant was only for two purposes, first, to restore him to actual custody and, second, to advise him of the purpose of his reincarceration within the walls of the penitentiary. As stated he was already not merely in custody but in charge of the officials of the District of Columbia. He was also fully advised, at the personal hearing accorded him before the District of Columbia Board, of the charge upon which he was brought before it.

We are in accord with appellant's contention that the District of Columbia Board of Indeterminate Sentence and Parole was the one vested with jurisdiction to determine whether or not the parole should be revoked. A careful analysis of the District of Columbia Act, taken in connection with all other laws relating to the parole law, will clearly demonstrate that this is true. We are, therefore, presented with a case in which the Board pronouncing final judgment was vested by statute with full jurisdiction to determine the question at issue; at which the prisoner was accorded a fair hearing, to which he made no objection; and in which his only complaint is that he was not brought before the Board upon a proper warrant.

■ While the contention that Jarman's sentence would have expired on October 3, 1934, if given credit for good-time allowance and, therefore, had expired before the issue of the warrant on January 31, 1935, has been abandoned, at the same time certain decisions upon this point are illuminating as to other issues here involved as showing the exact status of Jarman under the law while on parole, particularly as showing that he was still in contemplation of law a prisoner, his parole privilege being merely an extension of the

prison walls, that misconduct during the period of parole causes a forfeiture of good-time allowance that might have been earned prior to the beginning of the parole period, and that for misconduct during the parole a warrant may be issued and served after the sentence would have expired with good-time allowance, provided the misconduct occurred before the expiration of the sentence. United States ex rel. Rowe v. Nicholson, Superintendent, supra (C.C.A.) 78 F.(2d) 468; Anderson v. Corall, 259 U.S. 579, 42 S.Ct. 590, 66 L.Ed. 1073; Id., 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247; Aderhold, Warden v. Perry (C.C.A.) 59 F.(2d) 379; Morgan v. Aderhold, Warden (C.C.A.) 73 F.(2d) 171; Platek v. Aderhold, Warden (C.C.A.) 73 F.(2d) 173; Harrell v. Aderhold, Warden (C.C.A.) 73 F.(2d) 189; Halligan v. Marcil (C.C.A.) 208 F. 403–405; United States ex rel. Anderson v. Anderson, Marshal (C.C.A.) 76 F.(2d) 375; United States ex rel. Anderson v. Anderson, Marshal (D.C.) 8 F.Supp. 812.

We may here remark that the fundamental basis of Jarman's petition to be released on writ of habeas corpus is that his custody is illegal. He has not procured and does not claim to have endeavored to procure any decision from the proper authorities that his good-time allowance had been earned or awarded. Unquestionably he could forfeit the entire good-time allowance and, under the authorities cited, and the admitted facts of this case, he did forfeit such good-time allowance for the entire term of his sentence by his misconduct while on parole. He has taken no proceeding whatever to compel the proper authorities, by mandamus or otherwise, to pass upon this question and to abbreviate his sentence. If released at all, therefore, it would be merely to restore him to his quasi liberty on parole, and the Parole Board being charged only with the question of revocation of his parole would be powerless to credit him with an allowance of time for good conduct, since such allowance could be made only by the warden of the reformatory with the approval of the Attorney General. In providing for deductions from prisoners' sentences for good conduct, the statute title 18 U.S.C.A. § 710, imposes the condition that the prisoner's record of conduct must show "that he has faithfully observed all the rules and has not been subjected to punishment." The petition for habeas corpus contains no allegation that

such was the case and we may not assume as a fact what is not even alleged. It appears, therefore, that he is foreclosed on that question.

Appellant relies with great emphasis on the case of Moore v. White, Warden (C.C.A.) 23 F.(2d) 467. That case, however, is lacking in analogy to Jarman's case for many reasons. Moore after his conviction was sentenced to a term of five years in the United States Penitentiary at McNeill Island, Wash., so designated as a place of his confinement. He was thereafter released on parole which he violated and was rearrested under instructions of the Attorney General, charged with violating his parole, and delivered to the Federal Penitentiary at Leavenworth, Kan. This occurred in 1926, at which time the Board of Parole of the Leavenworth Penitentiary, upon a hearing, found that Moore had violated the terms of the parole which had been granted by the Board of the McNeill Island Penitentiary. Some time later, without issuing any warrant for the arrest of appellant, or having him recommitted to the custody of that institution, and without according him any opportunity to appear before it, the McNeill Island Penitentiary Board revoked the parole. Clearly this was a case in which the Parole Board of the Leavenworth Penitentiary was without jurisdiction to pass upon or revoke the parole previously granted by the McNeill Island Penitentiary Board, and its attempted revocation was a nullity. It is also manifest that the McNeill Island Board's order of revocation was void for the reason that Moore was never restored to the custody of that penitentiary and its Parole Board never obtained jurisdiction of his person for the purpose of giving him a hearing, and never in fact accorded him any hearing whatever. While the language of the appellate court in that case might imply the necessity of the issuance of a warrant by the warden of that particular penitentiary in order to give jurisdiction, it is evident that the court had in mind the necessity of the parolee being in the custody of the particular institution and being accorded a personal hearing by its Board rather than the manner in which jurisdiction over his person was obtained. In Jarman's case the Parole Board had jurisdiction both of the parolee and the subject matter of its consideration. In Moore's Case the McNeill Island Parole Board, although vested with authority upon presentation

of proper grounds, and upon procuring custody of the parolee, to enter an order of revocation, had entirely failed to meet either of these requirements and its action was without jurisdiction and void.

Affirmed.