**UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,**

v.

**TRIDENT SEAFOODS CORPORATION, Defendant–Appellant–Cross–Appellee.**

Nos. 94–35989, 95–35074.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1996.

Decided Aug. 7, 1996.

Lois J. Schiffer, Assistant Attorney General, Lisa E. Jones, United States Department of Justice, Washington, D.C., for plaintiff-appellee-cross-appellant.

Ralph H. Palumbo, Heller, Ehrman, White & McAuliffe, Seattle, Washington, for defendant-appellant-cross-appellee.

Daniel T. Fitzpatrick, Pacific Legal Foundation, Sacramento, California, for amicus curiae.

Before WRIGHT, PREGERSON and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

The United States brought an action against Trident Seafoods Corporation (Trident) for violating the Clean Air Act. Trident made an offer of judgment before trial, which the United States rejected. Because the offer of judgment exceeded the final judgment, Trident moved for an award of attorneys' fees and costs pursuant to Fed. R.Civ.P. 68. The district court denied Trident an award of fees, but granted an award of costs. Trident appeals the order denying fees, and the United States cross-appeals the order awarding costs. We affirm.

## BACKGROUND

Trident is a seafood processing corporation. In May 1988, the company purchased and began to renovate an abandoned fish cannery in Anacortes, Washington. To remove asbestos insulation from the facility, Trident hired James Hinton, a general con-

tractor. He in turn hired a subcontractor, Thomas Stakkeland, who removed over five tons of asbestos during five days in August and September 1988. Stakkeland, who was not certified at the time to remove asbestos, used his eleven-year-old son and a person with no prior experience in asbestos removal to assist in the clean-up. After the clean-up was supposedly completed, at least five bags of asbestos were left at the facility.

On September 26, 1988, an asbestos inspector for a state agency, the Northwest Air Pollution Control Authority (NWAPCA), learned of the asbestos removal and inspected the facility. During the inspection, he removed samples of suspected asbestos for analysis. The results showed that all samples contained more than one percent asbestos.

On September 30, 1988, Trident notified the government of its intent to remove the asbestos. On October 5, 1988, the five bags of asbestos left by Stakkeland were removed from the Anacortes facility. The inspector also returned and removed additional samples from the facility, which again tested positive for asbestos.

Trident eventually hired a new asbestos contractor to remove the remaining asbestos at the Anacortes facility. Twenty-five bags were removed on October 14, 1988. NWAPCA cited Trident for failing to provide advance written notice of the planned asbestos abatement. As a result, Trident paid a $250 fine to the State of Washington.

The Environmental Protection Agency (EPA) also learned of the asbestos abatement at the Anacortes facility. The Clean Air Act authorizes the EPA to develop National Emission Standards for Hazardous Air Pollutants (NESHAP). 42 U.S.C. §§ 7412(c) and 7414(a) (1988).[1] The asbestos NESHAP provides notice requirements and work practice standards that must be met when renovating or demolishing a facility that contains asbestos. 40 C.F.R. pt. 61, subpt. m (1988). A violation of NESHAP constitutes a violation of the Act. 42 U.S.C. §§ 7412(c) and (e) (1988).

In August 1989, the EPA served Trident with a request for information regarding the abatement of asbestos at the Anacortes facility. Trident responded that same month. Nearly three years later, on April 8, 1992, the United States Department of Justice (DOJ) notified Trident that the EPA had referred the asbestos abatement matter to the DOJ, which intended to file an action against Trident for violations of § 7413(b) of the Clean Air Act, 42 U.S.C. § 7413(b). The DOJ explained that its purpose in notifying Trident was to give the company an opportunity to settle the matter before it filed a complaint.

According to Trident, settlement negotiations took place in April 1992, during which the DOJ stated that it was pursuing the action because "Trident has deep pockets" and because the United States wanted "a piece" of $30 million Trident earned in sales the previous year. The government contended that Trident would likely incur more than $346,000 in litigation expenses and risk a liability judgment of more than $3 million, if the company proceeded to trial. The government, therefore, offered to settle the action for $346,886. Trident rejected the offer. Its research indicated that the average settlement in 1992 for alleged violations of NESHAP was between $20,000 and $35,000.

On June 29, 1992, the DOJ filed an action on behalf of the United States against Trident. The complaint alleged one notice violation and four work practice violations of the asbestos NESHAP as a result of the asbestos abatement at the Anacortes facility. Stakkeland and Hinton were named as individual defendants.

During discovery, the government noticed depositions of Trident's President and Vice President to take place during the Christmas holidays. These depositions were rescheduled, however, when the trial date was continued. The government also caused Trident employees and officers to be served at their homes by United States Marshals, even though Trident's in-house counsel agreed to

---

1. Because this action arose in 1988, the 1988 versions of the Clean Air Act and related regulations govern these proceedings.

accept trial subpoenas on behalf of all company employees.

On May 3, 1993, Trident served the government with an offer of judgment pursuant to Fed.R.Civ.P. 68. The offer included a civil penalty of $30,000, as well as a consent decree to: (1) conduct a survey of all Trident vessels and shore facilities; (2) institute a company-wide asbestos control program; and (3) expend at least $100,000 on asbestos abatement within two years. The government rejected the offer on May 19, 1993.

On July 3, 1993, Trident served the government with a superseding Rule 68 offer of judgment, which was identical to the previous offer, except that it increased the civil penalty to $50,000. The government again rejected the offer.

On July 22, 1993, the district court granted summary judgment in the government's favor on the claim that Trident violated the NESHAP notice requirement by failing to provide advance written notice to the EPA of its intent to remove asbestos.

Shortly before trial, the government made a settlement demand in the amount of $125,000, which Trident rejected. The trial, which began in August 1993, resulted in a jury verdict in favor of Trident on all four charges of work practice violations. The district court assessed a penalty for the NESHAP notice violation in the amount of $65,000, finding that the violation was continuous with mitigating factors.[2]

Trident moved for an award of attorneys' fees and costs pursuant to (1) Rule 68, (2) the Equal Access to Justice Act (EAJA), and (3) the Clean Air Act. The court denied the motion for attorneys' fees, but granted the motion for statutory costs pursuant to the EAJA.

Trident appealed the $65,000 penalty and we reversed, finding that the violation was singular rather than continuous. *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 557 (9th Cir.1995). We remanded the action and directed the district court to impose a new penalty not to exceed $25,000. On remand, the district court entered judgment imposing a penalty of $25,000, less $250 already paid.

Trident now appeals the order denying attorneys' fees. In a consolidated appeal, the government seeks review of the order awarding costs. We have jurisdiction over these timely appeals under 28 U.S.C. § 1291, and we affirm.

## DISCUSSION

### I. ATTORNEYS' FEES

■ Trident contends that it is entitled to attorneys' fees as part of the costs awardable under Rule 68. We review the issue *de novo*. *Erdman v. Cochise County*, 926 F.2d 877, 879 (9th Cir.1991) (*citing Simon v. Intercontinental Transp. (ICT) B.V.*, 882 F.2d 1435, 1439 (9th Cir.1989)). Under Rule 68, if a plaintiff rejects a defendant's offer of judgment, and the judgment finally obtained by plaintiff is not more favorable than the offer, the plaintiff must pay the costs incurred subsequent to the offer.[3] *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 442 (9th Cir. 1982). The award is mandatory; Rule 68 leaves no room for the court's discretion. *Id.*

The minimum value of Trident's offer of judgment is indisputably $50,000. On December 18, 1995, the district court entered a final judgment imposing a penalty of $25,000 against Trident. Thus, the offer of judgment exceeds the final judgment.

---

**2.** Smaller penalties were also assessed against Hinton ($2,500) and Stakkeland ($5,000).

**3.** Rule 68 provides, in relevant part:
At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.
Fed.R.Civ.P. 68.

■ The term "costs" in Rule 68 is intended to refer to all costs properly awardable under the relevant substantive statute. *Marek v. Chesny,* 473 U.S. 1, 9, 105 S.Ct. 3012, 3016–17, 87 L.Ed.2d 1 (1985). Absent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorneys' fees, such fees are to be included as costs for purposes of Rule 68. *Id.* To determine the interplay between Rule 68 and the Clean Air Act, the Court must construe the "plain meaning" interpretation of both the Rule and the statute in a manner that gives meaning to every word in each. *Id.* at 9–11, 105 S.Ct. at 3017.

The Clean Air Act indicates that Congress did not intend to award attorneys' fees unless the action was unreasonable. The Act provides:

In the case of any action brought by the Administrator under this subsection, the court may award costs of litigation (including reasonable attorney and expert witness fees) to the party or parties against whom such action was brought if the court finds that such action was unreasonable.

42 U.S.C. § 7413(b). The only interpretation that gives meaning to every word in both Rule 68 and the Clean Air Act is that "costs" in Rule 68 include attorneys' fees only if the action was unreasonable.

Trident contends that this interpretation frustrates the purpose of Rule 68 by robbing it of any independent operative force. According to Trident, if attorneys' fees are awardable under Rule 68 only if the action was unreasonable, there could never be a case where attorneys' fees would be awarded under Rule 68 when such fees were not already awardable under the Clean Air Act. Rule 68 is not intended to expand the bases for recovery of attorneys' fees. Rather, the purpose of Rule 68 is to encourage settlement by forcing the parties "to 'think very hard' about whether continued litigation is worthwhile...." *Marek,* 473 U.S. at 4, 11, 105 S.Ct. at 3014, 3017. An interpretation of Rule 68 "costs" that includes attorneys' fees if the government brings an unreasonable § 7413(b) action is likely to force the government to scrutinize more closely the reasonableness of its action when faced with an offer of judgment. If the government concludes that the court is likely to find that the action is unreasonable, the offer of judgment is more likely to be accepted.

Trident also cites numerous cases for the proposition that the EAJA allows a party to recover attorneys' fees under Rule 68 in a § 7413(b) action. *See Thomas v. Peterson,* 841 F.2d 332, 334 (9th Cir.1988); *Natural Resources Defense Council, Inc. v. United States EPA,* 703 F.2d 700 (3rd Cir.1983); *Environmental Defense Fund, Inc. v. EPA,* 716 F.2d 915, 918 (D.C.Cir.1983); *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1464–65 (Fed.Cir.1986). Each of these cases is distinguishable, however, on the ground that it concerned § 2412(d)(1)(A) of the EAJA—a provision not relevant here for the purpose of determining whether attorneys' fees should be awarded. The EAJA does not define "costs" to include attorneys' fees. *See* 28 U.S.C. § 2412(a)(1). Fees instead are defined separately. 28 U.S.C. §§ 2412(d)(1)(A) & (d)(2)(A). Thus, because attorneys' fees are not properly awardable as "costs" under § 2412(d)(1)(A), they are not within the scope of Rule 68. *See Marek,* 473 U.S. at 9, 105 S.Ct. at 3016 (Rule 68 "costs" include attorney's fees only where "underlying statute defines 'costs' to include attorney's fees").

Accordingly, Trident is entitled to attorneys' fees only if the action was unreasonable.

### A. *Standard of Review*

■ The district court found that the action against Trident was reasonable. The standard of review to be applied to such a finding under § 7413(b) is an issue of first impression. We review a similar determination by the district court under the EAJA for an abuse of discretion. *Kali v. Bowen,* 854 F.2d 329, 334 (9th Cir.1988). The EAJA permits a prevailing party to recover attorneys' fees "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).

We apply an abuse of discretion standard to the court's determination under § 2412(d)(1)(A) whether or not the United

States' position was "substantially justified" in accordance with the Supreme Court's decision in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). In determining the proper standard to be applied, the Supreme Court noted in *Pierce* that § 2412(d)(1)(A) explicitly requires the district court to make the determination whether the position was substantially justified. *Id.* at 559, 108 S.Ct. at 2547. The Court reasoned, moreover, that deference should be accorded to the district court because it is better positioned to decide the issue, given its full knowledge of the factual setting and insights not conveyed by the record. *Id.* Finally, the Court considered the impracticality of formulating a rule of decision for determining whether the government's position was "substantially justified." The Court concluded that "the question whether the Government's litigating position has been 'substantially justified' is . . . a multifarious and novel question, little susceptible, for the time being at least, of useful generalization, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop." *Id.* at 562, 108 S.Ct. at 2548.

The same considerations as in *Pierce* persuade us that an abuse of discretion standard should be applied to a district court's determination of whether an action is unreasonable under § 7413(b). As in *Pierce*, deference should be accorded to the district court because § 7413(b) explicitly requires the district court to determine the issue. And again, as in *Pierce*, the government's reasonableness in bringing the action is at issue. Thus, the district court is better positioned to determine the issue, and a formulaic rule is not likely to be helpful.

■ We find an abuse of discretion if the district court bases its decision on an erroneous conclusion of law or on an irrational interpretation of the evidence. *Williams v. Bowen*, 966 F.2d 1259, 1260–61 (9th Cir.1991) (*quoting Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir.1988)).

**B.** *The Law*

■ We begin our review with an analysis of the applicable law. Courts also have yet to articulate a test for determining whether an action is unreasonable under § 7413(b). The district court applied the Ninth Circuit's test for determining whether the government's position was "substantially justified" under the EAJA. Applying this test was not erroneous because it requires a finding that the action had a reasonable basis both in law and fact. *See Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 388 (9th Cir.1993) ("[w]here the Government can show that its case had a reasonable basis both in law and fact, no award will be made") (*quoting League of Women Voters v. FCC*, 798 F.2d 1255, 1257 (9th Cir.1986)). Section 7413(b) provides for an award of attorneys' fees "if the court finds that such action was unreasonable." 42 U.S.C. § 7413(b). Thus, the district court applied a test properly based on the plain language of the statute.

■ The district court concluded that the action was reasonable based on "the facts of this case and given the clear dictates of the law." In so concluding, the court correctly reasoned that a strict liability standard applied to NESHAP violations. *See United States v. Sealtite Corp.*, 739 F.Supp. 464, 468 (E.D.Ark.1990); *United States v. Hugo Key and Son, Inc.*, 731 F.Supp. 1135, 1137 (D.R.I. 1989); *United States v. Ben's Truck and Equip. Inc.*, 25 Env't Rep. Cas. (BNA) 1295, 1298, 1986 WL 15402 (E.D.Cal.1986); *see also* H.R.Rep. No. 294, 95th Cong., 1st Sess. 70 (1977), *reprinted in* 1977 U.S.C.C.A.N 1077, 1148 ("[P]ersons who own or operate pollution sources in violation of . . . health regulations must be held strictly accountable. . . . Thus, the committee believes that the remedial and deterrent purposes of the civil penalty provision would be better served by not limiting its application to 'knowing' violations."). Thus, given the governing law, the district court correctly concluded that the action had a reasonable legal basis.[4]

4. Another potential issue of first impression is whether the government's conduct prior to filing the action should also be considered in determining if the action is reasonable. We need not reach that question here, however, because the district court explicitly considered the government's pre-filing conduct in finding that the action was reasonable. Thus, there is no issue

## C. *The Evidence*

 The district court also based its decision on a rational interpretation of the evidence. In finding that the action was reasonable, the court considered the government's manner of pursuing the action. For example, the court noted the government's ten-month delay in notifying Trident of the NESHAP violations and its nearly four-year delay in prosecuting the action. The court also noted the government's "excessive" litigation tactics and that its settlement position exceeded the average settlement in a Clean Air Act case by ten times. Analysis of the government's conduct caused the court to remark that it could "well understand Trident's frustration with the Government's pursuit of this case and its failure to settle."

Trident's methods for asbestos abatement were undoubtedly inadequate. The undisputed facts show that Trident failed to provide advance written notice to the EPA of the planned asbestos abatement. It is also undisputed that, after the abatement was supposedly completed, bags of asbestos still remained at the Anacortes facility; samples taken from the facility still tested positive for asbestos; and Trident ultimately hired new contractors to complete the clean-up. Thus, although the government may not deserve commendation for the manner in which the action was maintained, its legal and factual foundation cannot reasonably be disputed. Therefore, the district court's finding that the action was reasonable should not be disturbed. *See Arizona v. Thomas,* 824 F.2d 745, 749 (9th Cir.1987) (courts have been "careful to defer to EPA's choice of methods to carry out its 'difficult and complex job' so long as that choice is reasonable and consistent with the Clean·Air Act") (*quoting Connecticut Fund for Env't, Inc. v. EPA,* 672 F.2d 998, 1006 (2nd Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 445, 74 L.Ed.2d 601 (1982)).

## II. *COSTS*

 The district court awarded Trident its statutory costs as the prevailing party pursuant to § 2412(a)(1) of the EAJA, which provides in relevant part:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency ... of the United States ... in any court having jurisdiction of such action.

28 U.S.C. § 2412(a)(1). The United States contends that this provision of the EAJA is preempted by § 7413(b) of the Clean Air Act, which permits an award of costs only if the district court finds that the action was unreasonable. According to the government, the Clean Air Act provides the sole basis for an award of costs because the EAJA is displaced where "otherwise specifically provided by statute." 28 U.S.C. § 2412(a)(1).

 We review questions of statutory construction *de novo,* based upon the following guidelines:

First, if the statutory language is clear, we need look no further than that language itself in determining the meaning of the statute. Certainly that is true if there is no clearly expressed congressional intent to the contrary. Second, to the extent that statutes can be harmonized, they should be, but in case of an irreconcilable inconsistency between them the later and more specific statute usually controls the earlier and more general one. Finally, Congress must be presumed to have known of its former legislation and to have passed new laws in view of the provisions of the legislation already enacted. *Hellon & Assoc., Inc. v. Phoenix Resort Corp.,* 958 F.2d 295, 297 (9th Cir.1992) (citations and quotations omitted).

We begin our analysis with the plain language of Clean Air Act § 7413(b) and EAJA § 2412(a)(1). *Hellon; Pacific Mut. Life Ins. Co. v. American Guar. Life Ins. Co.,* 722 F.2d 1498, 1500 (9th Cir.1984) ("primary rule is to ascertain and give effect to the plain

whether failure to consider the government's conduct prior to filing the action resulted in an

erroneous application of the law.

meaning of the language used") (*citing Hughes Air Corp. v. Public Util. Comm'n,* 644 F.2d 1334, 1337 (9th Cir.1981)). According to the EAJA's plain language, costs are recoverable for the prevailing party in all actions against the United States, unless "otherwise specifically provided by statute." 28 U.S.C. § 2412(a)(1). The Clean Air Act's plain language provides that a party defending against the United States in an action under the Clean Air Act may recover costs if the government's action is unreasonable. 42 U.S.C. § 7413(b). Whether these statutes provide alternative or mutually exclusive bases for costs awards is not made clear by their plain words. We are, therefore, unable to end our analysis here.

The next step is to determine whether the statutes may be read harmoniously. *Hellon,* 958 F.2d at 297; *see also Pacific Mut.,* 722 F.2d at 1500 ("The words of a statute must be construed in context and the statutes must be harmonized, both internally and with each other to the extent possible."). These statutes may be harmonized if they are interpreted to provide independent bases for the recovery of costs. Thus, a defendant may recover costs (including attorney and expert witness fees) under § 7413(b), if the government's action was unreasonable, whether or not the defendant prevails. This interpretation is not new. *See Pierce,* 487 U.S. at 569, 108 S.Ct. at 2552 ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose.").

In contrast, a prevailing plaintiff or defendant may recover costs (but no attorney or expert witness fees) under the EAJA, whether or not the action was reasonable, unless costs are specifically precluded by another statute. *See SEC v. Kaufman,* 835 F.Supp. 157, 159 (S.D.N.Y.1993) ("Costs are available under EAJA § 2412(a)(1) only when not specifically precluded by another statute.") (denying costs under EAJA in action brought under Securities Exchange Act of 1934, which provides that "[n]o costs shall be assessed for or against the Commission in any proceeding under this chapter" (15 U.S.C. § 78aa)); *see also Tulalip Tribes v. FERC,* 749 F.2d 1367 (9th Cir.1984) (denying costs

under EAJA in action brought under Federal Power Act, which provides that "no costs shall be assessed against the commission in any judicial proceeding under this chapter" (16 U.S.C. § 825p)), *cert. denied,* 474 U.S. 900, 106 S.Ct. 270, 88 L.Ed.2d 225 (1985). The more specific statute barring costs awards creates an irreconcilable inconsistency and thus trumps the more general EAJA. *See Hellon,* 958 F.2d at 297. Section 7413(b) does not specifically preclude costs; it simply provides that costs may be awarded if the court finds that the action was unreasonable. Thus, there is no irreconcilable inconsistency.

The government contends that the two statutes are not intended to be read harmoniously. Specifically, the government argues that § 2412(d)(1)(A)'s exception clause, "[e]xcept as otherwise specifically provided by statute," indicates that the EAJA's cost-shifting provision is intended only as a "gap-filler"; therefore, it should not be applied here because the Clean Air Act's more restrictive cost-shifting provision already applies.

However, the purpose of the EAJA is to "reduce the deterrents and disparity" in contesting government action. H.R.Rep. No. 96-1418, 96th Cong., 2nd Sess. 6 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984. An interpretation of the EAJA that permits costs awards in actions under the Clean Air Act only if the government was unreasonable undermines the EAJA's purpose. If a private party is not assured of recovering its costs even when it prevails in an action against the government, its incentive to adjudicate its rights is likely to be deterred by the perception that it is more practical to endure an injustice than contest it.

An analogous provision in the EAJA also belies any congressional intent to award costs only if the government was unreasonable, regardless of whether the private litigant prevails. The EAJA's provision for shifting attorneys' fees (Section 2412(d)(1)(A)) begins with the identical exception clause "[e]xcept as otherwise specifically provided by statute." To determine the purpose of this exception clause, several Circuits have looked to the provision's legislative

history.[5] *See Gavette,* 808 F.2d at 1464; *Environmental Defense Fund, Inc.,* 716 F.2d at 917–19; *United States v. 329.73 Acres of Land,* 704 F.2d 800, 805–06 (5th Cir.1983); *Natural Resources Defense Council,* 703 F.2d at 704–06. A House Report on the EAJA states:

> [S]ection [2412(d)(1)(A) ] is not intended to replace or supercede any existing fee-shifting statutes such as the Freedom of Information Act, the Civil Rights Acts, and the Voting Rights Act in which Congress has indicated a specific intent to encourage vigorous enforcement, or to alter the standards or the case law governing those Acts. It is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized.

H.R.Rep. No. 96–1418, 96th Cong., 2nd Sess. 189 (1980), *reprinted in* 1980 U.S.C.C.A.N. at 4997.

Given the purpose of the EAJA, there is no reason not to give the exception clause in the EAJA's cost-shifting provision the same meaning as in its fee-shifting provision. Neither the legislative history nor the language of the EAJA justifies an interpretation of the EAJA that expands the bases for recovery of attorneys' fees but restricts the availability of costs awards. The Clean Air Act and the EAJA may be read harmoniously if they are interpreted to provide alternative bases for the recovery of costs. Under this construction, the exception clause in the EAJA's cost-shifting provision precludes application of the statute only if another statute allows costs even if the litigant does not prevail, or specifically bars costs awards, thus creating an irreconcilable conflict.

We finally observe that "Congress must be presumed to have known of its former legislation and to have passed new laws in view of the provisions of the legislation already enacted." *Hellon,* 958 F.2d at 297. Since Congress waived the United States' immunity to liability for costs awards long before § 7413(b) was enacted in its present form, Congress is presumed to have been aware that costs were already recoverable for prevailing parties in actions against the government when it provided that the government's unreasonableness was a basis for recovery in actions under the Clean Air Act. *Id.* Yet, the Clean Air Act does not state that costs are available *only if* the Government was unreasonable, nor does it state that costs may not be recovered *unless* the Government was unreasonable. Rather, the Clean Air Act provides that "the court may award costs ... if the court finds that such action was unreasonable." Thus, nothing in the language indicates an intent to preclude application of the previously enacted EAJA.

### III. *SOVEREIGN IMMUNITY*

■ The government argues that the Clean Air Act provides a narrow waiver of sovereign immunity which governs the award of costs in this action. Waivers of immunity must be strictly construed in favor of the sovereign. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *United States Dep't of Energy v. Ohio,* 503 U.S. 607, 615, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992); *Ardestani v. I.N.S.,* 502 U.S. 129, 137, 112 S.Ct. 515, 520–21, 116 L.Ed.2d 496 (1991). They must not be "enlarged beyond what the language requires." *Ruckelshaus,* 463 U.S. at 686, 103 S.Ct. at 3278. "Neither, however, should we assume to narrow the waiver that Congress intended." *United States v. Idaho, ex rel. Director, Idaho Dep't of Water Resources,* 508 U.S. 1, 7, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993) (*quoting Smith v. United States,* 507 U.S. 197, 203, 113 S.Ct. 1178, 1183, 122 L.Ed.2d 548 (1993)).

This argument merely reiterates the government's argument that the Clean Air Act's more limited waiver should trump the general waiver of the EAJA, given the latter's exception clause. However, here, as ex-

---

**5.** Section 2412(d)(1)(A) states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
> 28 U.S.C. 2412(d)(1)(A).

plained above, Congress has left no doubt that it intended to waive the government's immunity to costs awards. On this basis we have concluded that Congress intended that the costs provision of the EAJA apply to § 7413(b) actions. Therefore, the district court did not err in taxing costs against the government.

AFFIRMED.