**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　　v.

DANTE VARGAS-AMAYA,
　　　　　*Defendant-Appellant.*

No. 03-50577

D.C. No.
CR 00-1471 JTM
SD Cal.

ORDER

Filed May 25, 2005

Before: Thomas G. Nelson, A. Wallace Tashima, and
Raymond C. Fisher, Circuit Judges.

Order;
Dissent by Judge Callahan

## ORDER

The panel has voted to deny the government's petition for panel rehearing. Judge Fisher votes to deny the petition for rehearing en banc, and Judges T.G. Nelson and Tashima so recommend. A judge of the court requested a vote on whether to rehear the matter en banc, but the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc rehearing.

The petition for panel rehearing and the petition for rehearing en banc are **DENIED.**

CALLAHAN, Circuit Judge, with whom O'SCANNLAIN, TALLMAN, and BEA, Circuit Judges, join, dissenting from denial of rehearing en banc:

I respectfully dissent from the denial of rehearing en banc. The panel's decision is the first judicial determination that absent an oath, a district court is without power to issue a bench warrant to secure the appearance of an individual on supervised release at a hearing to ferret out whether he has in fact violated a condition of release. This decision is wrong as a matter of law, disparages the role of district judges, insults the integrity of federal probation officers, and unnecessarily interferes with and complicates the administration of justice, as it has already rendered thousands of outstanding warrants potentially unenforceable.

## I

The panel itself recognizes that "no case of which we are aware has addressed" the question of whether an arrest warrant for a defendant on supervised release needs to be supported by an oath. *United States v. Vargas-Amaya*, 389 F.3d 901, 903 (9th Cir. 2004). I suspect that the issue has not been the subject of litigation because it is well established that the district court has wide discretion to order an individual on supervised release to appear in court so as to ensure compliance with conditions of supervision.

Failing to distinguish the average arrest/search warrant from a warrant issued for a supervised-release offender, the panel holds that "the district court lacked jurisdiction to consider the alleged violations of supervised release because the warrant . . . was not based on facts *supported by oath or affirmation*, as required by the Fourth Amendment." *Id.* at 902 (emphasis added). The panel bases its conclusion on its reading of 18 U.S.C. § 3583(i).[1]

---

[1]The statute provides:

The power of the court to revoke a term of supervised release for

Although the panel concedes that the statute has no express oath requirement, it nonetheless gleans such a requirement by parsing the statute into three components: "(1) a warrant or summons, (2) issue[d] before the expiration of a term of supervised release, (3) on the basis of an allegation of a violation of supervised release." *Id.* at 903. The panel treats each part as an isolated requirement that has no bearing on the meaning of the other components. *Id.* In utilizing this method of statutory dissection, the panel avoids considering the definition of "warrant" in the context of the overall statute.[2] It also allows the panel to ignore the government's argument that the last phrase of the statute — "a warrant or summons has been issued on the basis of an allegation of such a violation" — provides that a "warrant" under these circumstances is something less than that required by the Fourth Amendment for the ordinary individual. *Id.* at 905. Instead, the panel concludes that Congress's use of the term "warrant" in the statute is a term of art that carries with it the full protection of the Fourth Amendment's requirement of an " 'oath or affirmation.' "[3] *Id.* at 904 (quoting U.S. Const. amend. IV) (emphasis omitted).

---

> violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration *if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.*

18 U.S.C. § 3583(i) (emphasis added).

[2]It appears that Congress intended the statute at issue, by its plain terms, to be nothing more than a tolling provision, one which allows the district court to determine whether an individual committed violations while he was on supervised release even though the supervised-release term has technically lapsed. *United States v. Okoko*, 365 F.3d 962, 964-65 (11th Cir. 2004); *United States v. Naranjo*, 259 F.3d 379, 383 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). The language of a tolling provision, particularly language that is ambiguous, should not be construed to create a jurisdictional requirement on how a probation officer seeks a warrant.

[3]The leading law dictionary does not reference an "oath" or sworn allegations in defining a "warrant." *See* BLACK'S LAW DICTIONARY (8th ed. 2004) ("A writ directing or authorizing someone to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure.").

The panel attempts to support its determination by citing Federal Rules of Criminal Procedure 4 and 9. *Id.* at 905-06. There is no question that both of these rules require sworn allegations in order for a valid *arrest* warrant to issue. The panel's reliance on these rules, however, fails to distinguish the dynamics of ordinary arrest proceedings from those concerning supervised release. *Id.* While it is true that Congress expressly requires an oath under Rules 4 and 9, it does not require the same under the statute at bar or other related statutes. This is because Congress, consistent with historical practice and the Constitution, treats the retaking of convicted criminals on conditional release differently than unconvicted targets of arrest.[4]

The panel's decision overlooks Supreme Court and Ninth Circuit precedent that reflects this congressional intent. In *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357 (1998), the Supreme Court observed that a parolee does not enjoy "the absolute liberty to which every citizen is entitled, but only [ ] the conditional liberty properly dependant on observance of special parole restrictions."[5] *Id.* at 365 (quotation omitted); *accord Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("[R]evocation[ ] is not a stage of a criminal prosecution, [even if it] does result in a loss of liberty."); *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (recognizing that a parolee does not have the full panoply of constitutional rights to which a criminal defendant is entitled). Relying on these cases, we have reached the same conclusion in the

---

[4]As the Seventh Circuit has aptly noted, Rules 4 and 9 "apply to warrant issued at the start of a criminal case, not to when a person violates his supervised release[.]" *United States v. Hondras*, 296 F.3d 601, 602 (7th Cir. 2002).

[5]Whereas *Scott* dealt with a parolee, the case at bar concerns a defendant on supervised release. This distinction is of little import. *See United States v. Kinkade*, 379 F.3d 813, 817 n.2 (9th Cir. 2004) (en banc) ("Our cases have not distinguished between parolees, probationers, [or] supervised releasees for Fourth Amendment purposes."), *cert. denied*, 125 S. Ct. 1638 (2005).

supervised-release context. *See United States v. Soto-Olivas*, 44 F.3d 788, 792 (9th Cir. 1995) (holding that "[p]roceedings to revoke supervised release . . . need not comply with the procedural protections constitutionally guaranteed for criminal prosecutions"). The panel's decision is thus contrary to this established line of precedent, which dispels the idea that an individual arrested for violating supervised release is entitled to have the probation officer subscribe to a formal oath under the Fourth Amendment when petitioning the district court to hold a hearing on the alleged violation.

The Supreme Court's opinion in *Scott* also explains why the usual warrant requirements do not apply to an individual on supervised release. As the Supreme Court noted, the government "has an 'overwhelming interest' in ensuring that a [defendant] complies with [supervision] requirements and is returned to prison if he fails to do so." *Scott*, 524 U.S. at 365 (quoting *Morrissey*, 408 U.S. at 483). The Supreme Court appreciated that the "costs of allowing [one on supervision] to avoid the consequences of his violation are compounded by the fact that [he is] . . . more likely to commit future criminal offenses than [the] average citizen[ ]." *Id.* "Indeed, this is the very premise behind the system of close [ ] supervision." *Id.*

The panel fails to square its literal application of the Fourth Amendment with the reasons given by the Supreme Court for not extending the full panoply of Fourth Amendment rights to convicted defendants on supervised release. The question is not whether a technical application of the Fourth Amendment is logically possible, but whether in light of precedent such as *Scott* and *Morrissey*, the panel's interpretation is constitutionally compelled. I would hold that, pursuant to this procedure, what is required for a valid warrant to issue is that a judge find probable cause to believe that a defendant has violated his supervised release. *United States v. Hondras*, 296 F.3d 601, 603 (7th Cir. 2002).

## II

The panel's decision also fails to appreciate that courts have approved warrant procedures allowing arrests of parolees on unsworn allegations.[6] As the government made clear in its petition for rehearing, the statute at issue is similar to its predecessor, 18 U.S.C. § 717, which provided in pertinent part,

> [i]f the warden of the prison . . . from which [a] prisoner was paroled or the Board of Parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, at any time within the term or terms of the prisoner's sentence, may issue his warrant to any officer hereinafter authorized to execute the same for the retaking of such prisoner.

Pet. for Reh'g at 6 (quoting 18 U.S.C. § 717 (1934)).

The Fourth Circuit squarely held that an arrest warrant issued under the predecessor statute did not require sworn allegations of parole violations. *See Jarman v. United States*, 92 F.2d 309, 311 (4th Cir. 1937) (distinguishing for Fourth Amendment purposes between the retaking of a parolee and the arrest of an individual charged with a crime). Other circuits followed suit. *E.g.*, *United States v. Polito*, 583 F.2d 48, 54-56 (2d Cir. 1978); *Story v. Rives*, 97 F.2d 182, 188 (D.C. Cir. 1938). As the former statute has no oath requirement and provided a blueprint for the current statute, we should accept that Congress intended for the same rule to apply to defendants on supervised release (especially in light of no evidence that Congress intended otherwise). *See United States v. Hanousek*, 176 F.3d 1116, 1121 (9th Cir. 1999) ("Congress is

---

[6]In enacting 18 U.S.C. § 3583, Congress replaced "parole" with "supervised release." *United States v. Kinkade*, 379 F.3d 813, 817 n.2 (9th Cir. 2004) (en banc), *cert. denied*, 125 S. Ct. 1638 (2005).

presumed to have known of its former legislation and to have passed new laws in view of the provisions of the legislation already enacted.") (citing *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 862 (9th Cir. 1996)).

Moreover, the panel attached significance to the fact that it knew of no statute authorizing the issuance of *any* warrant based on unsworn allegations. *Vargas-Amaya*, 389 F.3d at 904. There is, however, an existing statute that specifically authorizes a warrant to be issued simply on motion of the government. Title 18 U.S.C. § 3148(b) provides in relevant part:

> The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section.

18 U.S.C. § 3148(b) (2005). Admittedly, this statute concerns pretrial release rather than supervised release; nonetheless its existence refutes the panel's suggestion that issuing warrants based on unsworn allegations is statutorily unprecedented.

The panel also failed to appreciate that another statute, 18 U.S.C. § 3606, states:

> If there is probable cause to believe that a probationer or a person on supervised release has violated a condition of his probation or release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. A probation officer may make such an arrest wherever the probationer or releasee is found, and may make the arrest *without a warrant*.

18 U.S.C. § 3606 (2005) (emphasis added). The Second Circuit has found that such warrantless arrests of releasees "further the role of the probation officer as community protector[.]" *United States v. Reyes*, 283 F.3d 446, 557 (2d Cir. 2002).

## III

The statutory scheme and applicable case law thus appear to require that, in the supervised-release setting, constitutional due process requires only written notice to the releasee and a determination of probable cause by the district judge. These requirements are evident in Congress designing a flexible system that affords probation officials, working in conjunction with district courts, tools to swiftly safeguard society from violator conduct. 18 U.S.C. § 3583(e). "Thus, the trial court having supervision over the defendant had the authority *at any time* during the . . . supervised release period to issue an arrest warrant for a violation." MOORE'S FED. PRAC. § 632.1.02[2] (3d. ed. 2004) (emphasis added). Indeed, the ultimate responsibility for issuing such a warrant rests with the district judge, not the probation officer. In fact, the district court may initiate proceedings *sua sponte* when it has reason to believe that a violation has occurred, *United States v. Mejia-Sanchez*, 172 F.3d 1172, 1175 (9th Cir. 1999), and a judicial officer does not even have to personally sign the warrant. *Hondras*, 296 F.3d at 603. All that the district judge has to do is determine that enough of a showing has been made in order to arrest the releasee to appear for a hearing on the alleged violation. *Id*. This is how this aspect of the criminal justice system has traditionally worked. To add the requirement of an oath from the probation officer does little other than provide more opportunity for violators to endanger our communities.

The statute's flexibility is also reflected in the manual supplied to probation officers by the Administrative Office of the United States Courts, entitled "The Supervision of Federal

Offenders." In its current form, the manual provides guidelines that supervising probation officers must follow when requesting court action in a case where a convicted and sentenced defendant is believed to be violating a condition of his supervised release. Monograph 109 (Mar. 2004 Rev.) at V-14-15. The manual does not advise probation officers to provide their allegations to the district court under oath. In defining the "*Purpose of the Petition*," the manual states that the petition serves to "assist the court in determining whether probable cause exists to issue an arrest warrant and to detain the offender, if necessary, during the revocation proceedings[.]" *Id.* at V-15. In other words, the petition is not itself intended to be an instrument determining that there is probable cause; that is a determination reserved for the district judge.

The manual also instructs supervising probation officers to, "[w]henever possible, avoid secondhand (hearsay) testimony and obtain corroborating evidence (e.g., reliable documents or testimony from other sources)." *Id.* at V-16. There are, of course, cases where the officer is not able to "fully investigate and document the alleged violation(s)" because "the defendant poses an imminent danger to himself or others so as to require immediate action." *Id.* at V-18. Indeed, the manual goes on to conclude that "a warrant may be requested prior to obtaining complete documentation." *Id.* These provisions add further support to the concept that there are instances where the probation officer should bring information to the district court's attention even though the information is not fully documented or supported by an oath.

**IV**

As noted, the panel's novel approach unnecessarily interferes with and complicates supervised-release procedures. Once a supervising probation officer gets information that leads him to suspect that a releasee has violated a condition of his supervised release, it is incumbent on the probation

officer to immediately notify the district judge with such information. The district court then issues either a bench warrant or a summons requiring the releasee to appear for a show-cause hearing, where the government, the defense, and the probation officer can present evidence and argument supporting their respective positions. Because both the safety of the community and an individual's freedom are at stake, a district court usually makes time for a hearing on an alleged violation, even when its calendar is completely booked.

The expeditious and inherently less exacting nature of the process serves two important purposes. First, lest the defendant once again poses a risk of criminal behavior, the streamlined proceedings safeguard the community from potential danger. Second, this process enables the district court to dispense with the allegations without delay if they prove untrue so that the defendant can continue his path toward rehabilitation. Absent such a pragmatic procedure guiding the district court's review of supervised release, these important objectives would be achieved infrequently, if at all.

## V

There are other important practical considerations for distinguishing warrants for revocation of supervised release from the average arrest warrant. One such consideration is the fact that probation officers, who notify district courts of alleged violations, are part of the judicial branch and are supervised by the courts. As this court has found, probation officers are the district court's investigative arm. *United States v. Sifuentez*, 30 F.3d 1047, 1049 (9th Cir. 1994). Unlike law enforcement or citizen informants, a probation officer's credibility is tested by and known to the district court. Thus, the district judge does not need an oath from the charging probation officer to vouch for the reliability and truthfulness of the information.[7]

---

[7]Even assuming that an oath by the probation officer is the preferable course, it does not follow that the absence of such an oath should deprive the district court of *jurisdiction* to determine whether the releasee is in compliance with his conditions of supervised release.

Furthermore, it is demeaning to suggest that a district judge's determination of probable cause depends on the probation officer's petition concluding with a formal oath. As officers of the court, probation officials are expected to stand behind their requests. In that regard, an oath in no way improves the substance of the probation officer's petition for a warrant. Simply put, if the substance of a petition is insufficient to support a finding of probable cause, the petition should be denied. If the panel was concerned with the level of proof proffered in this case for the issuance of the warrant — it should have said so — and not elevate the presence of a formal oath to a jurisdictional requirement for a supervised-release warrant.

## VI

Finally, the negative repercussions of the panel's opinion are reverberating throughout the circuit. Because most, if not all, district judges have issued warrants without requiring oaths by probation officers, the panel's opinion appears to require the voiding of thousands of warrants and possibly the release of thousands of supervised-release violators.

The government paints a clear picture of these consequences through the affidavit of a Supervisory Deputy United States Marshal for the Southern District of California's warrants section. He states that his office has been instructed by the United States Attorney not to execute warrants based on probation or supervised-release violations, and to remove all such warrants from their database. Furthermore, the panel's opinion has led to the immediate cessation of efforts by U.S. Marshals and local law enforcement to investigate and apprehend charged violators on all outstanding warrants. In just the Southern District alone, there are at least 1,380 outstanding warrants that are affected by the panel's decision. Of these warrants, 820 involve a supervised-release term that has already expired, thus casting doubt on whether the district court can even hold these defendants accountable. The

remaining 560 warrants will have to be withdrawn to be replaced, where possible, with new warrants based on identical petitions but for the inclusion of oaths. Other districts in our circuit are similarly affected. Again, unless constitutionally compelled, we should not mandate such a long, costly, and drawn-out adjustment of the procedures for reviewing possible violations of supervised release.

If we are going to part company with all of our sister circuits, and mandate a paradigm shift in a previously unquestioned, long-standing procedure by requiring oaths as a jurisdictional prerequisite to the issuance of warrants for individuals on supervised release, we should do so sitting en banc.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.